## TYLER v. WILHITE.

No. 12252—Opinion Filed Oct. 23, 1923.

Rehearing Denied Feb. 12, 1924.

1. **Oil and Gas—Right of Lessee to Remove Machinery—Replevin.**

Where an oil lease provides for the removal of machinery from the leased land within a certain period after the termination of the lease, and the lessor prevents lessee from operating the lease, the lessee is not confined to his remedy by injunction to prevent interference by the lessor in the operation of the lease, but may bring an action in replevin for the recovery of the property, where the lease expressly provides it does not become a part of the freehold.

2. **Same.**

Where a lessee operates oil or gas wells under a lease providing for the removal of certain machinery and buildings within 60 days after the termination of the lease, and the lessor, by his own acts of violence, renders it impossible for lessee to operate the wells, the cessation of pumping operations under such circumstances does not terminate the lease or constitute such an abandonment thereof as will deprive the lessee of his right to recover his property by action in replevin.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Washington County; Preston A. Shinn, Judge.

Action by Herbert F. Tyler against Ola Wilhite, for possession of certain personal

property. From judgment in favor of defendant, plaintiff brings error. Reversed and remanded, with instructions.

Shipman & Lewis, for plaintiff in error.

Kornegay & Probasco, for defendant in error.

Opinion by RUTH, C. This is an action in replevin originally filed in the district court of Washington county on March 30, 1920, by plaintiff in error, Herbert F. Tyler, against the defendant in error, Ola Wilhite, in which the plaintiff seeks to recover the following property:

1 25 H. P. Bessemer Gas Engine,
1 Oklahoma Push and Pull power,
1 Corrogated Push and Pull power house building, 16 x 48,
1 100 bbl. oil tank

—of which the plaintiff claims ownership, and alleges he is entitled to immediate possession thereof; that the property was placed on a certain ten acre tract belonging to defendant under an oil and gas lease, a copy of which lease he attaches to his petition, and on November 18, 1918, defendant unlawfully detained said property from plaintiff.

The parties will appear in this opinion as plaintiff and defendant, being their positions in the court below.

The lease attached shows it was made between Samuel White and the plaintiff on the 17th day of May, 1907, and was for a period of 15 years, and was to terminate on May 17, 1922, the termination of the lease being fixed on a certain day. The defendant, Wilhite, purchased the property subject to the lease of Tyler. The lease was in the usual form and provided for drilling one well within 12 months after the approval of Tyler's bond, and provides:

"Lessee shall have the privilege of delaying operations for a period of five years from date of approval by paying the sum of one dollar per annum per acre for each lease remaining undeveloped."

The lease further provided that all buildings and improvements shall become a part of the lands, "excepting the tools, boilers, boiler houses, pipe lines, pumping and drilling outfits, tanks, engines, and machinery, all the casing of all dry or exhausted wells, shall remain the property of the party of the second part (Tyler) and may be removed at any time before the expiration of 60 days from the termination of this lease."

Answer was filed consisting of a general denial, and alleged plaintiff had terminated the lease in 1918, and upon reply being filed, this cause was tried to the court. It appears from all the testimony in the case that the best of feeling did not prevail between the lessor and lessee, and while it is not set forth the nature of the legal actions, we gather from the evidence that the parties hereto had been in court with reference to this lease. The plaintiff testified that it was necessary to have water to operate or pump the wells, and that defendant borrowed from plaintiff's workmen a sledge hammer and broke his pump, so that he could not obtain water from the creek for the operation of the wells, and along in July or August, he ceased drilling operations, and along about the first part of August, 1918, they decided to abandon the Wilhite property and started to pull the wells. It appears that plaintiff had a lease on a 40 acre tract belonging to defendant, as well as his lease across the road belonging to another party, and the machinery which was replevied, was located on the ten acre tract, the lease of which had been obtained from Sam White, and which ten acres was subsequently acquired by the defendant; that while they were in the process of removing their property from the site, the defendant forbade plaintiff to go on the property and he notified his men and warned them to stay off the property, and that thereafter or in September, the defendant called the plaintiff over the phone when he had resumed operations and told plaintiff to quit pulling the wells, and told him that four cows had gotten in the power house and were shut up there for a period of four days, and that his damages to his cows was $50, and then the defendant raised the sum of his damages to the four cows to $150, and told the plaintiff that every day and every minute that he delayed paying the damages, the damages would get higher.

The testimony of D. M. Tyler, son of plaintiff, was to the effect that along about the first part of August, they decided to abandon the Wilhite property and pulled some of the wells.

Chas. R. Gipson testified that he formerly worked for Tyler and that when he was dismantling the plant for Tyler, Wilhite came to him and told him that if Tyler did not settle the damages for the cows by next Monday morning, he could stay off altogether, and Gipson further testified that to the best of his knowledge they stopped pumping probably in August, 1918, and immediately started removing

their property until ordered off the premises.

The defendant introduced but one witness, himself, and testified · that the last run of oil was in March, and that they pulled the well on this property in June, that the cows got in the power house the last day of September, 1918, and were in there four days and nights, that a roustabout came and wanted to get something from the power house and broke the staple off, and when he got it, he just left the door unlocked and the cows happened to get inside, and defendant "guessed" they rubbed the door shut, and he never thought of looking in there, as he supposed the door was locked, and the cows did not get out of the power house until about October 4th, and defendant hunted all over the country for them, and the day he went to the Wichita fair the cows came walking out of the power house. Defendant further testified that in the forepart of September, they came down there to get a tank off of the 40 acres, and that was the last thing on the 40 acres, and that he said to the foreman (Gipson): "I want all this stuff off immediately, I say, them 60 days is up immediately." This 40 acres adjoins the 10 acres and was being operated with the 10 acres as one property and with one set of machinery. Defendant testified that he furnished them water from a well for about 5 years; that the tank got leaky, and that he cut them off, then they put a pump down in the creek and pumped salt water in the old tank, and defendant took a sledge hammer and went down there and broke the pump and kept them from obtaining water necessary to operate their machinery and pump oil.

From the judgment in favor of the defendant, the plaintiff brings this cause here for review.

The position assumed by the defendant, and the only position assumed by him, is that the pumping of oil having ceased in March, 1918, this act on the part of plaintiff constituted a termination of the lease, and under the clause in the lease requiring the plaintiff to remove all machinery and equipment from the lease premises within 60 days after its termination, that plaintiff had no right to remove the equipment in August. The defendant files a very short brief and does not cite one single case in support of his theory, but does cite this court to Thornton on Oil and Gas, paragraphs 91, 137, 138 and 141, and we have examined this authority very

thoroughly and we do not find this work divided into paragraphs, and neither sections 91, 137, 138, or 141, nor on page 91, 137, 138, or 141, do we find any reference to the proposition attempted to be set up by the defendant "to the effect that an abandonment acquiesced in by the lessor ends the lease." See Thornton on Oil and Gas, paragraph 91. But we do find in section 141, page 224, Thornton on Oil and Gas (3rd Ed.) the following: "A failure for seven years to put down a test well was considered such laches as to show an abandonment and the lease was cancelled," and further examining Thornton on Oil and Gas, we find the following in section 217, page 349:

"The right of the lessee, under an express reservation of the right to remove buildings and machinery, has a right to do so irrespective of any controversy as to whether or not there is any legal right to abandon the lease by reason of an alleged failure on his part to complete the development," and cites authorities.

The plaintiff cites only two authorities in support of his position, to wit, Rennie v. Red Star Oil Co. et al., 78 Okla. 208, 190 Pac. 391; Sanders v. Davis, 79 Okla. 253, and these are attacked by the defendant who says that in Sanders v. Davis, supra, "there does not appear to be anything in that case that is bearing upon the points in this case, as it merely holds that injunction lies to prevent the lessor from interfering with the lessee in removing fixtures provided it is done in a reasonable time. In this case 60 days was the limit, after operations ceased and the wells were pulled."

We are going to be charitable enough to believe counsel does not intend to mislead the court, but counsel certainly has a misconception of the wording of the lease when he attempts to say that in this case 60 days was the limit after operations ceased, and the wells were pulled, for the lease distinctly says that he shall have 60 days after the termination of the lease, and the lease by its very terms fixes the date of the termination thereof in the spring of 1922, and not in 1918, and he cites us no authority whatsoever for his contention that a cessation of drilling operations terminated the lease. The position of the defendant cannot be sustained on any theory. We have presented here a case in which the plaintiff went upon this lease, developed it, and continued to pump oil, and the defendant testified that water was obtained from defendant's tank for pumping purposes, and that defendant shut this supply off, that the plaintiff, to continue his

lease and carry out the provisions thereof, went to the expense of laying 500 feet of pipe down to a creek, and installed a pump and pumped water from that creek for the purpose of operating his machinery to pump oil, and we find the defendant admitting that after the plaintiff had been put to the expense, because of defendant's refusal to permit plaintiff to get water from his tank, the defendant smashed the plaintiff's pump, and the only conflict in the evidence between the plaintiff and defendant with respect to smashing the pump is that the plaintiff testified that defendant borrowed a hammer from one of his men to smash the pump, and defendant testified that he took his own sledge, he didn't borrow their sledge, and broke the pump and kept it from killing blue grass, and it appears to us that every action on the part of the defendant was directed toward preventing the plaintiff from operating the wells, presumably for the reason that he desired to get the plaintiff off of the lease.

We do not know why the evidence with reference to the cows straying into the power house and being shut up for four days was injected into this case, and, from our viewpoint, it would have been better had no mention been made thereof, for we are not very forcibly impressed with the defendant's statement that four of his thoroughbred Jersey cows got into a power house not more than 600 feet from his dwelling house, and pushed the door to and stayed there for four days, and defendant looked all over the country for them, but never looked in a shed 600 feet from his dwelling. Defendant says that he did not look in the shed because it was locked, but in the next breath he says that a roustabout came there one time and broke the staple and left the door open, so if he knew that this roustabout broke the staple, he also knew the door was not locked, and in that shed was the most reasonable place to look for cattle which had been pastured in that field, and when he testifies that after looking for the cattle for four days, as soon as he, defendant, went to the Wichita fair, the cattle pushed the door open and came walking out, and it being testified to by the plaintiff and not contradicted by the defendant in any way that defendant demanded $50 as damages to his cattle before he would permit the removal of the building and machinery and then raised it to $150 and told plaintiff that every minute that he refused to settle, the damages would be raised, does not impress us in any degree

with defendant's fairness in treating with the plaintiff.

In Rennie v. Red Star Oil Co., supra, 78 Okla. 208, the late Justice Pitchford, supported by this court, holds as follows:

"Where the lessee ceases operations under a lease, such cessure alone is not sufficient to establish abandonment. As to whether or not the lessee has abandoned the premises, it depends upon all the circumstances of the particular case. If the lessor acquiesced in the cessure of operations or fails to act in a manner indicating he considers the leased premises abandoned, he may be restrained from interfering with the lessee in removing casing, pipes, and other improvements erected by the lessee upon the premises where the lease specifically gives the lessee the right to remove such casing, pipes, and other improvements at any time."

While the Rennie Case, as well as the Saunders v. Davis Case, supra, holds that the lessee has a right to enjoin the lessor from interfering with the removal, he does not have to pursue this remedy but may pursue his remedy in replevin, and this may be done at any time within the period fixed by the statute of limitations for filing such an action, and where the lessee is attempting to operate according to the terms of his lease, and the lessor places every obstacle in his way, and by his own physical acts in destroying the machinery whereby it is impossible for the lessee to perform the conditions of his lease, the lessor will not be heard to say that the cessation of pumping operations under such conditions by the lessee constituted a forfeiture or a termination of the lease.

We have examined such authorities as have been presented to us by both plaintiff and defendant and we find no hypothesis upon which the opinion of the court below can be sustained, and, for the reasons herein stated the judgment of the trial court should be reversed with instructions to enter judgment for the plaintiff for the possession of the property claimed.

By the Court: It is so ordered.