FISHER v. DIXON.

No. 29616. Sept. 24, 1940.

*105 P. 2d 776.*

C. J. Perry and B. A. Lewis, both of Bartlesville, for plaintiff in error.

Charles W. Pennel, of Bartlesville, for defendant in error.

DAVISON, J. In this appeal, the plaintiff in error seeks a review of certain alleged errors in the judgment of the trial court in an action commenced by the defendant in error on September 6, 1938, to enjoin him and his servants, agents, and employees from interfering with the defendant in error in going upon a certain 40-acre tract of land for the purpose of removing equipment used in the operation of an oil and gas mining lease thereon.

The plaintiff in error is the owner of said premises, and at the trial he relied upon the asserted defense that the lease under which the defendant in error claimed had terminated, and by the terms thereof he was entitled to said equipment.

The parties will hereinafter be referred to as "plaintiff" and "defendant," as they appeared in the trial court.

The land in question (together with another 40-acre tract adjoining it) originally belonged to an Indian allottee. The entire 80 acres was included in an oil and gas mining lease executed by the allottee on the 28th day of April, 1917, to one George T. Hastings and others. The lease provided for an initial term of ten years from the date of its approval by the Secretary of the Interior, but it also contained the usual provision extending said term for as much longer thereafter as oil or gas was found upon the premises in paying quantities. After the lease was executed and delivered, the Indian lessor's federal restrictions were removed and later the lease was extended past its initial term by the drilling of six producing oil wells on the leased premises prior to the year 1932.

The plaintiff derives his claimed right to go upon the land and remove the equipment therefrom through mesne assignments from the original lessees. His immediate assignor is his father, H. O. Dixon.

The defendant purchased the leased premises at an executor's sale in July, 1937. At that time the equipment thereon that had formerly been used for pumping the wells, through lack of use and failure to repair, had deteriorated to such an extent that it was no longer in operating condition and some reconditioning was necessary before said wells could again be pumped.

In March or April, 1938, the elder Dixon procured a promise from one Tom Brown (the pumper of the lease that adjoined the one in question) that the latter would attempt to operate said lease for a share of whatever production might be derived therefrom. After the expenditure of some labor and capital by Brown and Dixon on the project in reconditioning the lease's equipment preparatory to operating it, the defendant caused a written notice to be mailed, on May 28, 1938, to Dixon, announcing his intention to take possession of the leased premises 30 days thereafter, on the ground that said lessee had violated the terms of the lease by "failing to carry on developments and operations in a workmanlike manner," and had "abandoned said lease and failed to pump the wells thereon for a long period of time" and had permitted "drainage of said land by offset producing oil wells."

On July 7, 1938, the defendant instituted an action against H. O. Dixon to obtain cancellation of the lease, but when it was discovered that the plaintiff herein had on July 2nd complied with the defendant's request to obtain an assignment of the lease from his father, the suit was dismissed. The defendant's request that the plaintiff be assigned the lease, according to plain-

tiff's testimony, was made during a conversation in which the plaintiff submitted to the defendant a proposal to operate the lease himself.

In urging that the trial court erred in granting plaintiff the relief he sued for, the defendant seems to rely principally upon the undisputed fact that oil and gas have not been produced from the wells on the leased premises *in paying quantities* since the year 1932. Because of this fact, it is urged that the lease expired in that year, and according to the provisions of the lease, the plaintiff had only 60 days thereafter within which to go upon "the leasehold premises for the purpose of pulling the casing and removing the equipment."

In support of the defendant's position, his counsel cite expressions from Woodruff v. Brady, 181 Okla. 105, 72 P. 2d 709, 113 A. L. R. 391; Anthis v. Sullivan Oil & Gas Co. et al., 83 Okla. 86, 203 P. 187; and other cases to the effect that, if after the expiration of the fixed term of an oil and gas mining lease the lessee fails to produce oil or gas in paying quantities from the leased premises, the lease expires by its own terms.

The above cases are distinguishable from the present case. The above cases involve the cancellation of oil and gas leases, while the present action pertains to the right of removal of equipment mentioned in the lease. We believe the rule promulgated in the case of Rennie v. Red Star Oil Co. et al., 78 Okla. 208, 190 P. 391, to be applicable to the fact situation presented in the case at bar. In that case this court said:

"Where the lessee ceases operations under a lease, such cesser alone is not sufficient to establish abandonment. As to whether or not the lessee has abandoned the premises depends upon all the circumstances of the particular case. If the lessor acquiesces in the cesser of operations or fails to act in a manner indicating he considered the leased premises abandoned, he may be restrained from interfering with the lessee in removing casing, pipes, and other improvements erected by the lessee upon the premises, where the lease specifically gives the lessee the right to remove such casing, pipes, and other improvements at any time."

In the present case, as in the Rennie Case, supra, it was apparent that the lessor had not acted in a manner to indicate he considered the lease premises abandoned, nor the lease terminated. There had been six wells drilled on the leasehold estate by the lessee and his assigns. While oil had not been produced on the leased premises in paying quantities since 1932, yet a small quantity of oil was produced as late as 1937. In 1938 some work had been done on the lease equipment, at the expense of the immediate assignor of the plaintiff, and in July, 1938, certain negotiations were pending between the lessor and plaintiff whereby the plaintiff was to do additional work on the lease, the exact nature of which is not disclosed by the record. The trial court evidently concluded that both the lessor and lessee, on May 28, 1938, considered the lease to be in force.

Paragraph 5 of the lease in question provides as follows:

"The lessee * * * shall not remove therefrom any building or permanent improvements erected thereon during the said term of the said lease, but said buildings and improvements shall remain a part of said land and become the property of the owner of the land as a part of the consideration for this lease, *except tools, derricks, boilers, boiler houses, pipe line, pumping and drilling outfits, tanks, engines and machinery, and the casing of all dry or exhausted wells which shall remain the property of the lessee, and may be removed at any time prior to sixty days after the termination of the lease by forfeiture or otherwise. * * *"* (Emphasis ours.)

We conclude that the trial court was justified in deciding that the lease terminated on June 28, 1938, insofar as the right to remove equipment was concerned, and that the lessee had 60 days thereafter to remove from the lease the equipment and paraphernalia as described in the above paragraph.

We must next look into the time of the attempted removal of this equipment by the lessee. There is evidence in the record that plaintiff (lessee) attempted to remove this equipment from the premises within the above-mentioned time, but was prevented from so doing by the defendant. According to the testimony of the defendant's employee, and his own witness, Tom Childers, the plaintiff made his first attempt to remove same on July 30th, and it is undisputed that the removal of said equipment was effectively prevented by Childers, as the employee of defendant, at all times after May 28, 1938.

Since, under the provisions of the lease, the plaintiff was entitled to many days subsequent to that date for removing the equipment, but was prevented from doing so by the defendant, the latter must now fail in his attempt to retain the equipment.

The principle of estoppel applies to oil and gas mining leases as it does to ordinary contracts. See Summers, Oil & Gas, chap. 17, § 526, pp. 216, 217. When this principle is applied to the present case, the defendant, after having prevented the plaintiff from exercising his right to remove the equipment in question from the leased premises during the period granted him by the lease, is now estopped from taking advantage of his own unauthorized conduct, and cannot be heard to say that because the plaintiff did not remove said equipment during said period, he no longer has the right to do so. See Tyler v. Wilhite, 97 Okla. 159, 222 P. 997; Ray v. Brush, 112 Kan. 110, 210 P. 660; Heard v. Pratt (Tex. Civ. App.) 257 S. W. 660; Summers, Oil & Gas, chap. 15, §§ 451, 470.

The judgment of the trial court is not against the clear weight of the evidence and is hereby affirmed.

BAYLESS, C. J., and CORN, GIBSON, and DANNER, JJ., concur.