PARKER et vir v. FEENBERG.

No. 31860. July 3, 1945.

*160 P. 2d 954.*

Jno. W. Porter, of Muskogee, for plaintiffs in error.

Y. P. Broome and O. E. Swan, Jr., both of Tulsa, for defendant in error.

DAVISON, J. This cause is presented on appeal from the district court of Muskogee county. It was instituted in the trial court by J. A. Feenberg, as plaintiff, against Helen Parker and Robert E. Parker and others, as defendants. The plaintiff, who by assignment of August 2, 1943, was the owner of two oil and gas leases, sought to prevent the defendants from interfering with him in the going to and from the leased premises for the purpose of removing the hereinafter referred to equipment therefrom. The defendants, Parkers, in their answer asserted that the leases had by their terms long since expired and that the property of the lessees on the leased premises had not been removed within the time subsequent to the expiration of the lease allowed for the removal of such property.

On November 19, 1943, the hearing of the cause started. The defendants requested special findings of fact and conclusions of law. The respective parties then introduced their evidence and rested. At the conclusion of the evidence the trial court announced that the matter would be taken under advisement until December 4, 1943, at which time the trial court entered its special findings of fact and conclusions of law and thereupon adjourned until the 17th day of December, 1943, when judgment was entered for the plaintiff.

The defendants, Helen Parker and Robert E. Parker, have appealed. They appear before this court as plaintiffs in error. For the sake of convenience we shall continue to refer to the parties by their trial court designation.

The defendant Helen Parker owns the royalty under the two leases involved in this action. Her husband, the defendant Robert E. Parker, owns the surface under one of the leases. Mrs. Parker owns the surface as well as the royalty under the other. The plaintiff, J. A. Feenberg, acquired the leases by assignment on August 2, 1943, with the intention of sal-

vaging the same, that is, removing equipment which had been used in connection with the production of oil.

In presenting the case to this court the defendants assert that the judgment of the trial court is not sustained by the evidence and is contrary to law, and that the trial court erred in refusing to find as a matter of fact, pursuant to specific requests, (a) when each of the leases terminated by its own limitation; (b) when Tide Water Associated Oil Company last produced oil or gas in paying quantities in good faith from each of the leases; (c) the last day upon which the plaintiff had the right, if any, to remove any equipment from each of the leases.

One of the leases, referred to in the record as the Harjo lease, was executed on June 5, 1909, contains the following provisions: As to the term: ". . . for the term of five (5) years from the date hereof, and as much longer as oil and gas or either of them is found in paying quantities, . . . ." As to the removal of permanent improvements and equipment: "Party of the second part agrees not to remove from the premises any buildings or permanent improvements erected thereon during the term of this contract by the party of the second part; but said buildings and improvements shall remain on said land as a part of the consideration for this lease, excepting the tools, derricks, boilers, boiler houses, and drilling outfits, tanks, engines and machinery and casing, which shall remain the property of the party of the second part, and may be removed at any time within sixty (60) days after the termination of this lease by forfeiture or otherwise."

The other lease, referred to in the record as the Blackman lease, was executed on September 5, 1916. This lease provides: "It is agreed that this lease shall remain in force for the term of five (5) years, and as much longer thereafter as oil or gas, or either of them, is found in paying quantities, and produced from said land by the lessee." It also provides that: "Lessee shall have the right at the termination of this lease and for sixty days thereafter to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing."

Prior to the institution of this action the leases in controversy produced oil at the rate of about three and one-half barrels per week until on May 2, 1943, production ceased on one of the leases. Thereafter production continued on the other lease until about July 30, 1943. As to the Harjo lease, there seems to be little room for controversy in this case. Production did not cease until about three days before the lease was sold and assigned to the plaintiff in this action. With respect to the other lease, the one where production ceased on May 2, 1943, a debatable question exists. With respect to this lease the trial court found:

"That on or about the 2d day of May, 1943, the well producing both oil and gas on the Blackman lease was unhooked from the power and vacuum of pressure engine ceased to operate on May 2d, 1943, on or about the 14th day of May, 1943, the valve shut and plug pulled on the gas line conveying gas from said well to the power located on the Harjo lease but the said well remained fully equipped and ready for operation at all times up to and after the date of the purchase of these leases by plaintiff and could have been immediately put into operation by merely hooking the rod line back to the power and opening the valve and re-inserting the plug in the gas line. . . .

"The court further finds that at no time prior to August 27, 1943, did the defendants, or either of them, by word or act, give notice or in any manner indicate they considered that the leases had at any time previously been abandoned or do anything to give notice to either the plaintiff or his predecessor in interest, Tide Water Associated Oil Company, that said defendants, or either of them, claimed that the leases had expired or been abandoned or indicate in any way that they were claiming the right to the equipment on the leases adversely to the plaintiff or to Tide Water Associated Oil Company. On the contrary, from the testimony of the defendants themselves, the court finds that

up until the time Tide Water sold the properties to the plaintiff, the defendants had been insisting said company keep the leases in operation and that there were additional things the company ought to do to increase the production from said properties. . . ."

In the case of Fisher v. Dixon, 188 Okla. 7, 105 P. 2d 776, this court announced the following applicable rule of law:

"Where the lessee ceases operations under a lease, such cesser alone is not sufficient to establish abandonment. As to whether or not the lessee has abandoned the premises depends upon all the circumstances of the particular case. If the lessor acquiesces in the cesser of operation or fails to act in a manner indicating he considers the leased premises abandoned, he may be restrained from interfering with the lessee in removing casing, pipes, and other improvements erected by the lessee, where the lease specifically gives the lessee the right to remove such casing, pipes, and improvements at any time prior to sixty days after the termination of the lease by forfeiture or otherwise."

See, also, Rennie v. Red Star Oil Co., 78 Okla. 208, 190 P. 391.

Upon consideration of the authorities cited, we are of the opinion that the decision of the trial court is in accord with the weight of the evidence and the applicable law. We also entertain the view that the findings of fact made by the trial court sufficiently covered the issues of the case.

The decision of the trial court is affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, WELCH, and ARNOLD, JJ., concur.