## WOODRUFF v. BRADY.

No. 27604. Sept. 28, 1937.

Rehearing Denied Oct. 26, 1937.

Potterf, Gray & Poindexter, for plaintiff in error.

Stephen A. George, for defendant in error.

GIBSON, J. The defendant in error, Mamie A. Brady, brought this action in the district court of Carter county against plaintiff in error, Leonard J. Woodruff, to cancel an oil 'and gas mining lease. Judgment was for the plaintiff, and defendant has appealed. The parties are designated as they appeared at the trial.

The lease was executed by plaintiff January 9, 1926, for a term of five years "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

Plaintiff alleges that the lease has expired, become inoperative and null and void, and is now a cloud on her title. Although there are certain allegations in the petition charging forfeiture by reason of noncompliance with the express and implied covenants of the lease, but one contention is presented here by the record and briefs, namely: The lease by its own terms has expired for the reason that neither during the primary term thereof, nor since, has oil or gas been produced from the premises in paying quantities, and defendant is making no effort to that end.

While oil is being produced from the premises, defendant makes no contention that the production is in paying quantities, but meets the above allegations with the assertion that the plaintiff ratified and confirmed the lease as a paid-up and producing lease by executing a certain agreement with defendant after the primary term had expired, and that by her subsequent acts and conduct in accepting benefits under the lease was estopped to deny the validity thereof.

The above-mentioned agreement grew out of a compromise and settlement of 'a former action between the parties wherein plaintiff sought cancellation of the lease for alleged failure on the part of defendant to comply with the terms of the lease relative to operations, especially the 'alleged necessity of producing oil or gas in paying quantities. The material portion of the agreement is as follows:

"Now, therefore, it is agreed between the parties hereto 'as follows: That the defendant Leonard Woodruff will within sixty days from the date of this contract, towit: November 1st, 1933, put on the pump and produce oil from the well which said defendant drilled or caused to be drilled on the above-described property and that he will diligently produce oil from said well so long as oil can be produced from said well, and comply with the terms and provisions in the lease contract under which he commenced to drill said well, and that he will drill offset wells to any and all wells drilled adjacent to said property and which the law provides must be offset, and develop said property according to the oil and gas lease which he holds in consideration that the plaintiff, Mamie A. Brady, dismisses the suit now pending in the district court against him and others, to cancel said lease, and that when the said Leonard Woodruff has complied with this contract by putting the well now on said premises on a pump within sixty days from this date, unless it is a flowing well, it is agreed and considered by the plaintiff in this case that the oil and gas lease which the defendants hold on said property is in full force and effect and shall remain in full force and effect so long as the terms of said lease are complied with by the lessee or his assignee.

"This contract is made in duplicate and the names of the parties hereto are signed by W. E. Cruce, attorney of record for Leonard Woodruff, and Thos. W. Champion, of the firm of Champion, Champion & Fischl, attorneys of record for the plaintiff, Mamie A. Brady.

"Witness our hands this the 4th day of November, 1933."

Defendant says that by reason of this agreement the oil and gas lease became paid up, and vested in defendant the right to the oil and gas under the premises and eliminated the requirement that oil or gas be produced in paying quantities.

Here it is seen that the lease in so many words does not require that oil or gas be produced in p'aying quantities. However, with regard to habendum clauses of this character, the settled doctrine in this state is that "the terms 'produced' and 'produced in paying quantities' mean substantially the same thing." Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329.

Defendant contends that this rule does not apply in the face of the subsequent agreement modifying the term of the lease

as above set out; that the parties by their conduct since the agreement so understood the lease contract, and that the plaintiff by accepting royalty payments ratified and confirmed the lease as modified and is therefore estopped to insist on a forfeiture thereof.

Plaintiff says that it is not her contention that the lease was forfeited on account of failure to produce oil or gas in paying quantities, but insists that by reason of such failure the lease was not extended beyond the primary term thereof, except for a reasonable exploratory period. The plaintiff here takes the position that the agreement merely afforded the defendant an opportunity to extend the term of the lease by producing oil in paying quantities from the well then located on the premises, but that by reason of failure of such production the lease was permitted to expire under its own provisions.

Plaintiff's contention is well founded in reason. We find nothing in the foregoing agreement to abrogate or modify the provisions of the lease other than an extension of its term to permit the defendant to produce oil in paying quantities from the well then on the premises and thus extend the term of the lease, or, more accurately, to prevent it from expiring. Nowhere in the agreement is defendant relieved of the obligation to so produce oil or gas in order to obviate the termination of the lease. He was merely accorded the privilege of testing the well to ascertain whether it complied with the provision of the lease in that respect. The meaning and effect of the aforesaid habendum clause were not changed by the subsequent agreement. That clause fixed the term of the lease at five years and as long as oil or gas was produced in paying quantities. The five-year term has elapsed, and there is now no production in paying quantities.

With the exception of the privilege equity extends to the lessee to interrupt production while attempting to increase the same in existing wells by improving same (see Western States Oil & Land Co. v. Helms, 143 Okla. 206, 288 P. 964), a lease containing the habendum clause as here considered will expire under its own terms at any time upon failure of the lessee to produce oil or gas in paying quantities subsequent to the expiration of the primary term of the lease. This is an action to quiet title as against a lease that has allegedly expired by its own terms. No question of forfeiture is present. In Anthis v. Sullivan Oil & Gas Co., 83 Okla. 86, 203 P. 187, the court held:

"In an action to quiet title for the reason the lease terminated by its own terms, and the lease provides it shall remain in full force for one year, and as long thereafter as oil or gas or either of them is produced therefrom, and more than one year thereafter the evidence is uncontradicted that the lessee plugged the only well on said premises that had produced oil or gas, and there was no other well upon said premises from which oil or gas might be produced, held, the lease terminated by its own terms, and it was error to refuse to quiet plaintiff's title."

There the lessee had ceased to produce oil after the expiration of the primary term of the lease, and the court held that the landowner's title should be quieted as against the lease by reason of its expiration brought about by failure of production. Here the lessee had ceased to produce within the meaning of the lease (Gypsy Oil Co. v. Marsh, supra). Therefore the lease had expired, unless, as alleged by defendant, the plaintiff by her acts is now estopped to deny its validity or has waived the requirement that the production be in paying quantities.

The act charged to plaintiff as constituting estoppel or waiver was merely the acceptance and retention of payments for her royalty interest realized from production known to be in less than paying quantities. The essential elements of estoppel are not here present (see Gypsy Oil Co. v. Marsh, supra); but we are to say whether the above act constituted a waiver of the requirement that the production be in paying quantities, and operated to vest in defendant a perpetual oil and gas lease, subject, of course, to all other express and implied covenants and conditions of the original lease.

Although certain language in the Gypsy Case above is cited as a strong intimation by this court that the acts of the lessor as here in question should constitute waiver by way of estoppel, we are favored with no citation of authority directly in point. Waiver is defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right. 67 C. J. 289. Whether it has taken place depends entirely upon the facts peculiar to the particular case. 67 C. J. 293. A lessor is entitled in any event to payment for his royalty as pro-

vided in the lease whether the production be in paying quantities or not. To say that the acceptance thereof would excuse the lessee in future from producing oil or gas in paying quantities and vest in him a perpetual lease would be to extend the effect of the so-called waiver too far, and create a contract wholly without the contemplation of the parties. By accepting the royalty the lessor takes no more than the original lease provides, and he thereby obtains no advantage over the lessee. The lessee produces oil under an already expired lease and pays to the lessor his contractual portion. By accepting same he does no more than ratify operations under a lease that had lapsed by its own terms. He accepts no more than in law was due him by reason of acts of the lessee already performed and thereby merely ratifies those acts by accepting the accruing benefits. In reason, he cannot waive, ratify, or confirm by that act alone any future performance on the part of the lessee. He cannot compel the lessee to produce. That is settled. Therefore he cannot demand production in any quantity. That is optional with the lessee. Since there is no legal right to demand, there exists no legal right to waive. By the acceptance of benefits he could do no more than ratify the cause from which they accrued; and ratification implies acts already performed.

A landowner may waive a trespass by accepting benefits therefrom, or be estopped to deny the trespasser's right of occupancy, but certainly he would neither waive a continuing trespass nor be estopped to assert the same by the mere act of accepting benefits already accrued. Here it was demonstrated that the production was not in paying quantities and the lease therefore at an end. As long as the lessee remained upon the premises thereafter he was there without legal right to produce. At any time the lessor could demand compensation for that occupancy; could accept same, and at the same time demand relinquishment of the premises. By doing so the lessor is merely estopped to deny that he has ratified the occupancy to that date, or to deny that he has waived other demands relating to such occupancy. This should apply where, as in the instant case, the alleged acts of the lessor have not been acted upon by the lessee in any justifiable manner to his detriment.

Defendant next complains of the action of the court in admitting evidence, over his objection, to vary the terms of the written agreement heretofore mentioned, and in permitting plaintiff to introduce proof of fraud in the execution thereof in the absence of fraud pleaded.

Plaintiff's attempt to avoid the written agreement as the same was introduced in evidence by defendant has been abandoned. The defendant was granted all the relief possible under the agreement as presented by him. Although the evidence complained of may have been improperly received, it clearly appears that the court did not consider the same in rendering its decision. In such case, where the trial is to the court without a jury, the improper reception of evidence constitutes harmless error unless it appears that the trial court relied upon such evidence. Security Nat. Bank v. Martin, 113 Okla. 295, 241 P. 812. There the court held as follows:

"Where error is predicated upon the introduction of incompetent evidence, it must appear that the trial court relied upon such incompetent evidence before the case will be reversed; and where the conclusions of fact and of law show that such evidence was not considered, its admission will be held not prejudicial."

This being an equity case, we have reviewed the entire record, and find from such review that the judgment of the trial court is sustained by the clear weight of the evidence. In view of what we have said, it is unnecessary to mention or decide other contentions raised by defendant.

The judgment is affirmed.

BAYLESS. V. C. J., and RILEY, PHELPS, and DAVISON, JJ., concur.