WALDEN et al. v. POTTS et al.

No. 31539. Oct. 31, 1944.

*152 P. 2d 923.*

454

Busby, Harrell & Trice, of Ada, for plaintiff in error W. W. Walden.

Reily & Reily, of Shawnee, for plaintiffs in error Carl Sager and Jennie Lynn Sager.

Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, for defendants in error.

HURST, J. This is a suit to cancel an oil and gas lease on 80 acres of land in Pottawatomie county. The question is whether, under the facts and special terms of the lease, the lease had terminated.

Prior to September, 1940, a well for oil and gas purposes had been drilled upon the land, but it was abandoned and plugged. However, some oil was found in the well and it continued to flow some after it was plugged. On September 17, 1940, the plaintiffs, owners of the land, executed and delivered to W. W. Walden an oil and gas lease thereon. The lease contained these special provisions:

"It is agreed that this lease shall remain in force for a term of ONE (1) year from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee in paying quantities. . . .

"Lessee agrees to begin the actual cleaning out of an old well drilled and plugged in the Northwest corner of the herein described land, on or before the First day of November, 1940, and continue his operation with due diligence until completed; it being understood that a shut down for more than ten days at any one time shall immediately cause this lease to forfeit and thereafter become null and void.

"It is further agreed that in the event the Lessee's failure to clean out the old well and Lessee desires to commence a new test on the lease within twenty days after such abandonment of his original operation, this privilege will be allowed, but only with the understanding that the new test shall be drilled with same due diligence to completion and to a depth of not less than 3000 feet; and likewise any unnecessary shut down of the new test for a period of time exceeding ten days at any one time shall forfeit this lease and cause it to become null and void.

"It is specifically understood and agreed between Lessors and Lessee that the full consideration for this lease is the proposed development thereof."

Walden assigned the lease to other parties, retaining an overriding royalty of 1/16 of the oil and gas produced. The owners of the lease worked on it intermittently throughout the year and spent considerable money in an effort to make a paying well. In September, 1941, they made an agreement with Charles L. Jenkins to endeavor to clean out the well and make a producer, and they agreed to assign him one-half of their interest in the lease. No new well was drilled on the land. In February, 1942, Jenkins released to the plaintiff his interest in the lease.

On April 10, 1942, the plaintiffs commenced this action to cancel the lease, alleging that it had expired by its own terms because (1) on several occasions there were periods of more than ten days during which no work was prosecuted on the lease, and (2) no oil or gas has ever been produced by the defendants in paying quantities. Walden and the others claiming an interest in the lease were made parties defendant. The issues made by the pleadings, and on which evidence was introduced, were whether the lease had terminated by its own terms for the reasons alleged in plaintiffs' petition. Considerable evidence was introduced on this question. At the conclusion of the trial, the court found the issues in favor of the plaintiffs and specifically found that there was a period during September, 1941, when "there was a cessation of operations for more than ten days in violation of the terms of said lease," and "that no royalty was ever paid to plaintiffs, and that no division of oil was ever made for plaintiffs or either of them", and "that no oil or gas was ever discovered or produced in paying quantities from said premises and no well was ever completed to warrant the extension or continuance of said lease."

The case is one of equitable cognizance in which we will not disturb the judgment unless it is clearly against the weight of the evidence. Woodruff v. Brady, 181 Okla. 105, 72 P. 2d 709, 113 A. L. R. 391.

We have carefully considered the evidence and are of the opinion that the finding of the court is in accordance with, and is not clearly against the weight of, the evidence.

The appellants cite cases having to do with cancellation of oil and gas leases for breach of implied covenants. But the plaintiffs did not pitch their case on the theory of breach of implied covenant. Their theory is that the lease terminated by its express terms, above quoted, and they are entitled to an adjudication of that fact.

We are committed to the rule that the clause in an oil and gas lease continuing the lease in force as long as oil or gas is produced in "paying quantities" means that if oil is actually produced in such quantities as will pay a profit to the lessee over operating expenses, it is produced in paying quantities, though it may never repay the cost of drilling and equipping the well or wells. Pine v. Webster, 118 Okla. 12, 246 P. 429; Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, 48 A. L. R. 876. See, also, 24 Am. Jur. 580; Annotations in 48 A. L. R. 887, 84 A. L. R. 761, 91 A. L. R. 900.

The record here discloses that the oil that was produced was mixed with mud and water and was of a very poor quality and sold for only 40 to 65 cents per barrel. The court found that only about 500 barrels of oil had been produced from the well during the primary term of one year, and that the cost of operating the well would be about $125 per month. We think these findings are supported by the evidence and show that the well never did produce oil or gas in "paying quantities" as that term is used in the lease.

The finding of the trial court that there was a cessation of production for a period of more than ten days in September, 1941, is supported by the evidence.

Judgment affirmed.

OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur.