Sallie KERR and J. L. Stratton, Plaintiffs in Error,

v.

Harold HILLENBERG; Aphia French Lyons; Alta Brown; Royal Petroleum Corporation, a Corporation; Stanley M. Harris; W. A. Dodson; M. P. Loftis; and Ray R. Tyer, Defendants in Error.

No. 39598.

Supreme Court of Oklahoma.

June 26, 1962.

Leon J. York, Stillwater, Worthington & Browne, Cushing, for plaintiffs in error.

Charles B. Steele, O. E. "Pete" Richeson, Okmulgee, F. A. Petrik, Broken Arrow, Alfred Stevenson, Holdenville, for defendants in error.

JACKSON, Justice.

On December 10, 1959, plaintiff Sallie Kerr filed a quiet title suit in which the principal relief demanded consisted of the cancellation of oil and gas leases on 200 acres of land in Okmulgee County, Oklahoma. Mrs. Kerr alleged that she owned the surface and an undivided one-half interest in the minerals. Defendants were claimants of the leasehold and the owners of some of the royalty interest.

The 200 acres concerned constituted a portion of 280 acres of land covered by three oil and gas leases executed in November, 1912. Oil was discovered during the primary terms of the leases, and they had been jointly operated for many years prior to the filing of this action, to the extent that fuel from one lease was used in the operation of all three. Plaintiff Kerr acquired her title to the premises about 1946; defendant Aphia French Lyons acquired title to the leasehold in 1930.

Late in 1958 plaintiff Kerr took the position that the leases had expired because of non-production, and on September 18, 1959, she executed an oil and gas lease covering her portion of the premises to J. L. Stratton. Stratton did not record his lease until November 9, 1959, on which day Mrs. Lyons assigned her leasehold estate in the premises to defendant Harold Hillenberg, reserving an over-riding royalty interest.

The contest, therefore, is between Mrs. Kerr and Mr. Stratton, on the one hand, who contend that the 1912 leases had expired because of non-production, and Mrs. Lyons and Mr. Hillenberg, as defendants, who contend that the 1912 leases had not expired.

The trial court found generally in favor of Mrs. Lyons and Mr. Hillenberg, and quieted Hillenberg's title in the leasehold estate (under the 1912 leases) pursuant to his cross petition.

From the judgment, Mrs. Kerr, plaintiff below, has appealed, and Mr. Stratton, a defendant below, has cross-appealed. Since their interests are the same, we will refer to them hereinafter as plaintiffs or by name, and we will refer to Mrs. Lyons and Mr. Hillenberg as defendants or by name.

Plaintiffs' first proposition is that the 1912 leases had expired of their own terms because of non-production.

In support of their argument under this proposition, plaintiffs rely heavily upon a letter from the oil purchasers showing the net production of the leases concerned from November, 1956, through 1958, together with the testimony of a former pumper for Mrs. Lyons. Using this evidence, plaintiffs seek to demonstrate mathematically that the leases were actually operated at a loss to lessee during those years, as was done in Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876.

In Henry v. Clay, Okl., 274 P.2d 545, this court held in the syllabus:

"The term 'paying quantities', as used in an oil and gas lease, means paying quantities to the lessee. If the well pays a profit, no matter how small, over operating expenses, it produces in paying quantities, though it may never repay its cost and the operation as a whole may prove unprofitable."

■ While production was admittedly small during the years in question, plaintiffs failed to prove that production was not "in paying quantities", for the following reason. The major item of expense used by plaintiffs in their mathematical computations was the salary of the pumper, which they set at $175.00 per month for the entire period. In this connection, there was evidence that Mrs. Lyons hired a pumper on September 15, 1958, and that he worked at that salary until February, 1959. However, there is no evidence whatsoever as to the salary of pumpers who worked the leases prior to September, 1958. Plaintiffs therefore failed to prove that the leases were being operated at a loss, and the trial court's finding in this regard is not against the clear weight of the evidence.

It thus appears that if plaintiffs were entitled to prevail, it was upon the theory that the leases expired because of the cessation of actual production late in 1958, and not because of lack of production "in paying quantities" before that time. We therefore examine the record to determine the circumstances surrounding the actual cessation of production.

Under substantially uncontradicted evidence in the record, actual production ceased on leases 1 and 3 on December 15, 1958, when the "head was cracked" on the old Superior engine which was the common source of power for both leases, and on lease number 2 on February 16, 1959, when the stock of fuel, which had been supplied to its power source from lease number 1, became exhausted. Plaintiff Kerr admitted in effect that she never considered the leases at an end until production stopped in December, 1958. There was substantial evidence from defendant Lyons, corroborated by other witnesses, as to persistent efforts to obtain replacement parts for the engine in order to start the operation of the leases again.

Soon after production ceased, Mrs. Kerr began to deny the validity of the leases. She admitted that she talked to "a dozen people" about it. In April, 1959, Mrs. Lyons entered into a tentative agreement with the Webco Drilling Company for a water flood operation; on May 1, 1959, Mr. Webb, for Webco, wrote Mrs. Lyons that "After talking with some of the landowners and having your lease checked, I find that there are so many complications involving the legal angle that I do not believe I had better take this deal up". It is not denied that plaintiff Kerr was one of the landowners with whom Mr. Webb talked, and that she told him the Lyons leases had expired. A few days later Mrs. Lyons began negotiations with Gulf Oil Corporation and on May 22, 1959, Gulf made a substantial offer for the leasehold and the equipment thereon, with Mrs. Lyons to retain an over-riding royalty interest. The offer was later withdrawn because of Mrs. Lyons' doubtful title. Plaintiff Kerr admitted that when she talked with the Gulf representative, she told him that Mrs. Lyons did not have a lease. She also testified that she continued to receive gas for domestic use from the leases until May, 1960, several months after this action was filed. All of the above evidence is substantially uncontradicted.

■ Under the clear weight of the evidence in this case, the cessation of production was due solely to the mechanical breakdown of the engine which was the power source, and Mrs. Lyons made persistent and good faith efforts to get it repaired so that operation and production could be resumed. Under these circumstances, the life of the lease was extended by the following rule:

"Where there is a temporary cessation of production * * *, after the expiration of the primary term of the lease which was to continue for a fixed term and as long thereafter as oil or gas or either of them was produced from said land, the lease continues in force unless the period of cessation, viewed in the light of all the circumstances, is for an unreasonable length of time." Cotner v. Warren, Okl., 330 P.2d 217.

Therefore, the leases involved continued in force for a reasonable length of time. In Cotner v. Warren, supra, this court held in effect that five or six months was not an unreasonable length of time under the circumstances shown to exist.

Plaintiffs argue, however, in effect that Mrs. Lyons' conduct in negotiating for a water-flood operation was substantial evidence of an actual intention on her part to abandon production. The gist of the argument is that this conduct, coupled with the fact that actual production had ceased prior thereto, ipso facto terminated the lease contract, and operated to divest Mrs. Lyons of the protection afforded by the rule from Cotner v. Warren.

We do not agree that negotiations for a water-flood operation constituted persuasive evidence of an intention to abandon production. It was only evidence of an intention to abandon production *under primary recovery methods*. It was also persuasive evidence of an intention to *resume production* under secondary recovery methods.

While we are aware that this court has never held that a good faith intention and effort to change to a water-flood operation will extend the life of an oil and gas lease within the meaning of the rule from Cotner v. Warren, supra, we are of the opinion that equitable considerations require us to do so. In the Cotner case, the "cessation (of production) was only temporary and for a good reason". The same is true here. To hold to the contrary would amount to writing into the lease a provision that is not there—namely, that the lease should continue in effect only so long as oil or gas is produced *under primary recovery methods*.

Under the clear weight of the evidence in this case, the decision to change to a water-flood operation could have been made no later than April, 1959 (the tentative offer by Webco was withdrawn on May 1, 1959). The delay in resuming production since that time must be attributed to the conduct of plaintiffs; their denial of the validity of the leases caused the Webco offer, and the later offer by Gulf, to be withdrawn. We therefore hold that the delay in resumption of production, under all of the circumstances in this case, has not been for an unreasonable length of time.

Plaintiffs further contend, and the evidence shows, that after Hillenberg obtained the assignment from Mrs. Lyons, he removed all of the equipment from the lease and pulled the pipe from existing wells, and thus, according to plaintiffs, the lease expired by its own terms under the authority of Brown v. Shafer, Okl., 325 P.2d 734, and Woodruff v. Brady, 181 Okl. 105, 72 P.2d 709, 113 A.L.R. 391. They also invite attention to Western States Oil Company v. Helms, 143 Okl. 206, 208, 288 P. 964, 72 A.L.R. 357. These cases are cited as applying "where the original sand has been exhausted" and as authority for the proposition that lessee "may not continue exploration if oil or gas in the original sand is exhausted."

The fact that Webco Drilling Company, Gulf Oil Corporation, and Hillenberg were interested in a water-flood project would indicate that those engaged in the production of oil held the belief that the original sand had not become exhausted and would produce additional oil under a water flood project. Hillenberg explained the necessity for pulling the pipe from the old wells in testimony as follows:

"A. Well, our intentions have been from the very start to water-flood the properties, as they all very well know; and in order to waterfall these, it would be necessary to pull out these old wells because they didn't have the pattern of the flood, and the pipe wasn't of the quality that it could ever be put on a flood, so we would have to pull it up in preparation for the flood."

We do not find the cited cases controlling under the facts presented in this case.

Plaintiffs further argue that it is impossible for defendants to institute water-flooding operations here because of the

requirements of 52 O.S.1961 § 287.5, to the effect that no order of the Corporation Commission creating a unit for secondary recovery purposes shall become effective unless the owners of 63% of the royalty interests involved shall approve in writing the proposed plan of unitization. They point out that plaintiff Kerr owns 50% of the royalty under the premises concerned and say that Mrs. Lyons could not engage in water-flooding operations without the written consent of Mrs. Kerr.

This is not necessarily true. Under the evidence in this case, we cannot say that any proposed unit to be created by the Corporation Commission including the lands here concerned, under the provisions of 52 O.S.1961 § 287.1 et seq., would be so limited in size that the written consent of Mrs. Kerr would be required.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., and WELCH, HALLEY, JOHNSON, IRWIN and BERRY, JJ., concur.