**M. K. BALES et al., Appellants,**

v.

**DELHI–TAYLOR OIL CORPORATION et al., Appellees.**

No. 14000.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 7, 1962.

Rehearing Denied Dec. 5, 1962.

Cox, Patterson, Freeland & Horger, McAllen, Black & Stayton, Austin, for appellant.

Turner, White, Atwood, Meer & Francis, C. Sidney McClain, Dallas, Charles E. Thompson, F. E. Butler, McAllen, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellees.

BARROW, Justice.

This suit was brought by appellants, M. K. Bales and other landowners, to terminate certain oil, gas and mineral leases on land in the Bales Gas Unit for the alleged failure of lessees to produce oil or gas in paying quantities after expiration of the primary terms of the leases. Appellees are Delhi-Taylor Oil Corporation and Mayfair Minerals, Inc., each being the owner of an undivided one-half interest in the leases. Judgment was rendered in favor of appellees based upon favorable findings by the jury.

The jury found substantially as follows: (1) a reasonably prudent operator acting under similar circumstances would not have ceased producing the Bales No. 1 well from the 10,600 foot sand sooner than appellees did, considering only the profits to be realized from this sand; (2) ninety days would be a reasonable period of time within which lessees should be allowed to commence reworking operations after the date upon which a reasonably prudent operator would have ceased producing from the 10,600 foot sand; and (3) appellees commenced reworking operations on January 23, 1959.

Appellants assert that as a matter of law the leases had terminated for non-profitable production and that the leases had not been continued in force through drilling or reworking operations. In the alternative, appellants say that the findings of the jury on each issue are so against the great weight and preponderance of the evidence as to reflect passion and prejudice on the part of the jury. In connection with Issue No. 1, appellants assert that the trial court erred in instructing the jury not to consider as an expense any charge for depreciation of the equipment on said well.

Sixteen leases are unitized under the Bales Gas Unit. Most of the leases are for a primary term of five years and as long thereafter as oil, gas or other mineral is produced from said land or unitized area, and as long as operations are prosecuted under the terms of each lease. There are several different lease forms involved, but each provides substantially that if after discovery of oil or gas the production thereof should cease from any cause, the lease shall not terminate if lessees commence additional drilling or reworking operations or, if it be within the primary term, commence or resume the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three (four) months from date of completion of a dry hole or cessation of production.

The Bales No. 1 well, which was completed on May 24, 1952, in the 10,600 foot sand, was the only well in said unit. This was a good well and although the reservoir began to be depleted near the middle of 1958, appellants concede that the well operated at a profit until September, 1958. The income from the well, and the lease and plant expenses subsequent to August, 1958, are as follows:

| Month | Income | Lease Expense | Plant Expense | Net |
|---|---|---|---|---|
| Sept. 1958 | $512.00 | $141.00 | $18.00 | $353.00 |
| Oct. | 436.00 | 118.00 | 13.00 | 305.00 |
| Nov. | 312.00 | 101.00 | 9.00 | 202.00 |
| Dec. | 270.00 | 93.00 | 13.00 | 164.00 |
| Jan. 1959 | 109.00 | 128.00 | 4.00 | − 21.00 |
| Feb. | 116.00 | 111.00 | 5.00 | ——— |
| Mar. | 34.00 | 76.00 | 1.00 | − 43.00 |

Appellants urge, however, that a depreciation expense of $365.00 each month should have been included. This would result in a net loss for each month after August, 1958, although a net profit was earned for the period from January, 1958, through March, 1959. Appellants' witness Walker, a certified public accountant, testified that the useful life of the equipment on this well was fifteen years, with a salvage value of

ten per cent. Walker had never seen the equipment or the well site, and admitted that his figures bore no relation to the actual or market value of the equipment. He testified that the figures were assigned on the basis of his own accounting experience as to the normal useful life of similar equipment.

It is well settled that a habendum clause containing the language, "and as long

thereafter as oil, gas or other mineral is produced," means "produced in paying quantities." Further, if a well pays a profit, even small, over operating expenses, it produces in paying quantities, though it may never repay its costs, and the enterprise as a whole may prove unprofitable. Garcia v. King, 139 Tex. 578, 164 S.W.2d 509.

In order to terminate the leases, it was necessary for appellants to establish two propositions: first, that appellees were not making a profit from operation of the well; and, second, that a reasonably prudent operator would not have continued to operate the well under similar circumstances. Skelly Oil Co. v. Archer, Tex., 356 S.W.2d 774; Clifton v. Koontz, 160 Tex. 82, 325 S.W. 2d 684, 79 A.L.R.2d 774. The Supreme Court in Clifton v. Koontz emphasized that there can be no limit as to time, whether it be days, weeks, or months, to be taken into consideration in determining the question of whether paying production from the lease has ceased. In the case of a marginal well, the standard by which paying quantities is determined is whether or not, under all the relevant circumstances, a reasonably prudent operator would, for the purpose of making a profit and not merely for speculation, continue to operate the well. Further, the Supreme Court there held that several factors are to be considered in addition to net profit; one being the depletion of the reservoir.

We do not believe that appellants established, as a matter of law, either of these propositions necessary for a finding that the leases were terminated. Appellants concede that the issue of speculation is not in the case. If the item of depreciation was omitted, the well showed a profit each month through December, 1958. There is evidence to support the implied finding that appellees were prudent in draining this reservoir before abandoning it. The successful production record of the well was another factor to be considered in determining when the well should be shut in. There is evidence that the well declined very rapidly

in January, 1959. In December, 1958, appellees began to consider recompleting the well in another sand and contacted a contractor to discuss the cost. On January 23, 1959, appellees blew the well to get liquids out of the well bore, in an attempt to increase production. On January 26th, appellees secured a bid from a contractor and approved the expenditure of funds to recomplete the well in 10,500 foot sand. Some preliminary work was done before the contractor moved on the premises on March 14th. The well was satisfactorily completed in the 10,500 foot sand on April 9, 1959.

■ Appellants made no objection to the instruction under Issue No. 1, not to consider depreciation as an expense, and in fact requested this issue and instruction. Appellants also requested another issue and instruction which allowed depreciation to be considered. They do not complain of the failure of the court to submit their second requested issue and instruction. Appellants waived their objections to the instruction in the submitted issue by their failure to object to same. Rule 274, T.R. C.P. Furthermore, they cannot complain of their own requested instruction and issue. City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176; Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487; John Hancock Mut. Life Ins. Co. v. Brennan, Tex.Civ.App., 324 S.W.2d 610, ref. n. r. e. Therefore, the question of depreciation is considered only in connection with appellants' motion for instructed verdict.

■ It is now settled that actual depreciation on salvable equipment being used to produce gas from the well may be considered as an operating expense. It is not included if the equipment is a part of the drilling and completion expense. Skelly Oil Co. v. Archer, supra. Its application is very limited and we do not believe that the testimony of Walker showed that the depreciation on all equipment on the well, as a matter of law, could be considered as production expense. There was no evidence of what equipment is salvable. This

is so even though the well was recompleted at another sand. Furthermore, it is clear that Walker's depreciation rate is merely a bookkeeping entry as distinguished from actual depreciation. We, therefore, hold that appellants did not establish, as a matter of law, the amount of depreciation to be considered as expense.

■ We have considered all the evidence and find that the answer of the jury to Issue No. 1 is not so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Therefore, appellants failed to prove that the leases had terminated for nonprofitable production. In view of that holding, we do not discuss the other defense established by the verdict, i. e., that the leases were kept in force by the drilling and reworking clause.

■ Appellants urge error in the trial court's permitting appellees to prove that certain appellants had given top leases on their lands in this unit to three of the appellants who had agreed to prosecute this suit at no cost to the other appellants. This evidence was admitted over appellants' objection that it was highly prejudicial, irrelevant and immaterial. This was a general objection rather than a specific objection and therefore does not reflect reversible error. Marsh v. State, Tex.Civ.App., 276 S. W.2d 852, no writ history; Alpine Telephone Corp. v. McCall, Tex.Civ.App., 195 S.W.2d 585, ref. n. r. e. This evidence had no relevancy to the issue of whether appellees had produced minerals in paying quantities. However, appellees plead that some of the appellants were estopped to assert termination in that they had permitted appellees to recomplete the well in the 10,500 foot sand at great expense, without revealing that they had given the unrecorded top leases and intended to file this suit. Appellees had proper allegations of estoppel and this evidence was admissible on this issue. Furthermore, we overrule appellants' contention that the verdict reflects that the

jurors were thereby motivated to passion and prejudice against appellants. Any error in admission of this evidence would be harmless. Rule 434, T.R.C.P.

The judgment is affirmed.