Edward STEWART, Bettie Lue Stewart, Harbert F. Newton and Richard Lee Newton, Appellants,

v.

AMERADA HESS CORPORATION, Appellee.

AMERADA HESS CORPORATION, Appellee,

v.

The RODMAN CORPORATION, Rodman Gas Company, Choate Gas Co., Jack H. Choate and Thomas E. Rodman, Appellants.

Nos. 51254, 51255.

Supreme Court of Oklahoma.

Oct. 16, 1979.

Rehearing Denied Jan. 14, 1980.

Thomas E. Baker of Shutler, Baker, Simpson & Logsdon, Kingfisher, David S. Shumake of Liebel & Shumake, Oklahoma City, for appellants.

Vernon J. Collins, Cherokee, John S. Miller, Tulsa, for appellee.

OPALA, Justice:

The dispositive issues here are (1) whether oil and gas ceased being produced in paying quantities from an Amerada Hess Corporation [Amerada] leasehold, and if this be answered in the affirmative, then (2) whether the cessation operated to terminate Amerada's leasehold estate in the premises.

Amerada, owner of oil and gas lease acquired from predecessor in title of present owners [owners], assigned a portion of its lease to Union Texas Petroleum [Union], who sank a producing well.[1] The present owners[2] later leased the same premises to the Rodman Corporation [Rodman] who also succeeded in drilling a producing well.[3]

Owners brought an action to terminate Amerada's lease because oil and gas was no longer being produced in paying quantities. Amerada's own action followed. The latter suit's object was to eject Rodman from the leasehold premises and secure money judgment for the value of the oil and gas alleged to have been removed. The two causes were consolidated for trial. The trial court upheld Amerada's superior lease rights and rendered a money judgment against Rodman. On separate appeals by owners and Rodman, the Court of Appeals, in two opinions, reversed the judgments against Rodman and the owners. It held as a matter of law that Amerada's lease had expired because Union's well was not producing in paying quantities one year before and the year in which Rodman secured the succeeding leasehold. Amerada seeks our review of these decisions. We consolidated the two appeals for disposition of review on certiorari by a single opinion.

The Court of Appeals assumed that if equipment depreciation were to be considered as a production cost item for 1972 and 1973, Union's well operations were unprofitable during those two years but not so if that item were not included as an expense.[4] The trial court viewed depreciation of equipment as not mandatorily includible in computing lifting costs, while the Court of Appeals held that depreciation of production equipment installed upon the demised premises must be considered in determining profitability of the leasehold estate. The appellate court relied for its holding on *Edwards v. Hardwick*[5] and *Whitaker v. Texaco.*[6]

---

1. Union's well [Whitworth # 1] was drilled off the leased land but within the spacing unit which included a part of the demised premises. Amerada's lease came to be extended beyond the primary term because Union's well was producing, in part, from premises covered by the leasehold.

2. Plaintiffs in the cancellation suit are surface and mineral owners of the land in question.

3. The Rodman Corporation and its assignees are the defendants below in Amerada's suit. Rodman's lease from the present owners covers that portion of land which Amerada had

retained by not including it in the assignment to Union.

4. Owners' witness [a CPA] discussed two accounting approaches to lifting equipment depreciation. Under both methods explained by this witness a two-year unprofitable period would be shown. *In this opinion we hold that the base and period of depreciation should be determined by reference to currently prevailing accounting standards.*

5. Okl., 350 P.2d 495 [1965].

6. 283 F.2d 169 [10th Cir. 1960].

## I

■ The habendum clause of Amerada's oil and gas lease in suit provides that it shall remain in force, after the primary term, for as long thereafter as oil or gas is produced. The term "produced", when used in a "thereafter" provision of the habendum clause, denotes in law production in paying quantities.[7] The phrase means that the lessee must produce in quantities sufficient to yield a return, however small, in excess of "lifting expenses",[8] even though well drilling and completion costs might never be repaid.[9]

■ The cost of drilling a producing well—i. e. the expense incurred before oil is actually lifted from the ground—is not an item to be considered in computing production in "paying quantities".[10] The lifting of oil which marks the commencement of production stage is coincidental with the completion of a well. At that stage, critical here, only those expenses which are directly related to lifting operations can be included in determining if Amerada's lease remained in force beyond its primary term.[11]

Whether depreciation does constitute a mandatory cost item is an issue of first impression in Oklahoma. *Edwards*[12] neither decided nor dealt with it, while *Whitaker*,[13] a federal case, lacks the force of "authority" in that it cannot bind this court.

Extant case law on the national scene has given little attention to depreciation as a mandatory lifting expense item. Some case law indicates, without actually so holding, that depreciation might be considered to be in this category.[14] Other out-of-state authority reasons that since the original investment in a well may not be considered in computing oil lifting expenses, neither should producing equipment depreciation.[15] The rationale for not including depreciation, given by one court, was that it would bring about termination of many leases and tend to diminish the incentive to drill.[16]

■ Depreciation of equipment used in lifting operations is regarded as production expense in some states. The rationale for this rule is that while depreciation of the original investment in the drilling of a well may not be *stricto sensu* an out-of-pocket lifting expense, production-related equipment does have value that is being reduced through its continued operation.[17] We adopt this reasoning as sound and hold that depreciation should be mandatorily included as an item of lifting expense in determining whether there is production in "paying quantities". The base and the period of depreciation should be determined by refer-

---

7. *Henry v. Clay,* Okl., 274 P.2d 545, 546 [1954]; *Woodruff v. Brady,* 181 Okl. 105, 72 P.2d 709, 711 [1937]; *Gypsy Oil Co. v. Marsh,* 121 Okl. 135, 248 P. 329, 333 [1926]; *Parks v. Sinai Oil & Gas Co.,* 83 Okl. 295, 201 P. 517, 518 [1921].

8. Expenses necessary to lift the oil from the ground.

9. *Henry v. Clay,* supra note 7; *Gypsy v. Marsh,* supra note 7; *Walden v. Potts,* 194 Okl. 453, 152 P.2d 923, 924 [1944]; *Ardizonne v. Archer,* 72 Okl. 70, 178 P. 263, 264, 265 [1919].

10. *Henry v. Clay,* supra note 7; *Walden v. Potts,* supra note 9; *Gypsy Oil Co. v. Marsh,* supra note 7; *Ardizonne v. Archer,* supra note 9.

11. We have held that lifting expenses may include: costs of operating the pumps, pumpers' salaries, costs of supervision, gross production taxes, royalties payable to the lessor, electrici-ty, telephone, repairs and other incidental lifting expenses. *Henry v. Clay,* supra note 7; *Edwards v. Hardwick,* supra note 5; *Gypsy Oil Co. v. Marsh,* supra note 7; *Gallaspy v. Warner,* Okl., 324 P.2d 848 [1958].

12. Supra note 5.

13. Supra note 6.

14. *Transport Oil Co. v. Exeter Oil Co.,* 84 Cal. App.2d 616, 191 P.2d 129 [1948]; *West v. Russell,* 12 Cal.App.3d 638, 90 Cal.Rptr. 772, 43 A.L.R.3d 1 [1970].

15. *Clifton v. Koontz,* 160 Tex. 82, 325 S.W.2d 684 [1969], 79 A.L.R.2d 774.

16. *Transport Oil Co. v. Exeter,* supra note 14.

17. *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774 [1961]; *Bales v. Delhi-Taylor Oil Corp.,* 362 S.W.2d 388 [Tex.Civ.App.1962].

ence to currently prevailing accounting standards.

## II

Under a literal or strict interpretation of the "thereafter" provision in a habendum clause, uninterrupted production—following expiration of primary term—would be indispensable to maintain a lease in force. This would mean, of course, that *any cessation* of production [in the paying-quantities sense of the term], however slight or short, would put an end to the lease. Oklahoma has rejected that literal a view. Our law is firmly settled that the result in each case must depend upon the circumstances that surround cessation.[18] Our view is no doubt influenced in part by the strong policy of our statutory law against forfeiture of estates. The terms of 23 O.S. 1971 § 2 clearly mandate that courts avoid the effect of forfeiture by giving due consideration to compelling equitable circumstances.[19]

The "thereafter" clause is hence not ever to be regarded as akin in effect to the common-law conditional limitation or determinable fee estate. The occurrence of the limiting event or condition does not automatically effect an end to the right. Rather, the clause is to be regarded as fixing the life of a lease instead of providing a means of terminating it in advance of the time at which it would otherwise expire. In short, the lease continues in existence so long as interruption of production in paying quantities does not extend for a period longer than reasonable or justifiable in light of all the circumstances involved. But under *no* circumstances will cessation of production in paying quantities *ipso facto* deprive the lessee of his extended-term estate.[20]

A decree of lease cancellation may be rendered where the record shows that the well in suit was not producing in paying quantities and there are no compelling equitable considerations to justify continued production from the unprofitable well operations.[21] Because the trial court found that lifting expenses need not include depreciation, neither party had the opportunity to adduce proof of circumstances surrounding the stoppage of profitable production nor those factors which might afford compelling equitable considerations either in favor of or against lease cancellation.

The opinions of the Court of Appeals which set aside the trial court's judgments are vacated. The judgments of the trial court are reversed and the causes remanded for further proceedings consistent with these views.

LAVENDER, C. J., IRWIN, V. C. J., and SIMMS, DOOLIN and HARGRAVE, JJ., concur.

WILLIAMS and BARNES, JJ., dissent.

HODGES, J., not participating.

BARNES, Justice, dissenting:

I respectfully dissent from the Majority Opinion's conclusion that depreciation is an element in determining if oil and gas is being produced in "paying quantities".

As stated in the Majority Opinion, Oklahoma has a strong policy of statutory law against forfeiture of estates. 23 O.S.1971, § 2. It would appear to me that an operator should be encouraged to continue production, even of small quantities of oil, so

---

18. Duration and cause of the cessation, as well as the diligence or lack of diligence exercised in the resumption of production are factors to be considered. *Cotner v. Warren,* Okl., 330 P.2d 217, 220 [1958]; *Townsend v. Creekmore-Rooney Company,* Okl., 332 P.2d 35, 37, 38 [1958]; *McVicker v. Horn, Robinson, Nathan,* Okl., 322 P.2d 410, 413, 414 [1958]; *Beatty v. Baxter,* 208 Okl. 686, 258 P.2d 626, 629 [1953]; *Kerr v. Hillenberg,* Okl., 373 P.2d 66, 69, 70 [1962].

19. *Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 936, 937 [1943].

20. *Hunter v. Clarkson,* Okl., 428 P.2d 210, 212 [1967].

21. *Hunter v. Clarkson,* supra note 20.
   As the Court of Appeals stated in its opinion, the lease is not terminated for failure to produce the moment production stops, nor does it terminate the instant production falls below a profitable level. All surrounding circumstances must be taken into consideration before cancellation may be decreed.

that if the operator is willing to continue operation we should put as little burden on him as possible to show that production was in paying quantities. Here, the burden of proving the illusive concept of depreciation on lifting equipment might well be the straw that causes the operator to cease production rather than face a court battle in determining that question. This item is particularly illusory in this day of inflation where the salvageable value of the lifting equipment might in fact be increasing in value rather than decreasing in value.

I believe that the additional expense of repair of lifting equipment, as it gets older, would, when figured in on the lifting costs, serve as sufficient allowance for depreciation, and that depreciation of lifting equipment should not be considered in determining whether or not a well is producing in paying quantities.

I further dissent for the reason that, under the facts of this case, production has never ceased and there is no question but that it is producing in paying quantities at the present time, even if depreciation is considered as a necessary element in determining whether or not the lease is producing in paying quantities.

I am authorized to state that Justice WILLIAMS concurs in this opinion.