Mollie HININGER, Herbert Leroy Hininger, Lucille Ann Hildinger, C.A. Norman, Chloe Norman, Fred Tuttle and Leola Tuttle, Appellants,

v.

Herman George KAISER, Francis Oil & Gas, Inc., a corporation, Santa Fe-Andover Oil Company, a corporation, Marjorie Thomas, Ran Ricks, Jr., Bill J. Sparks, Mary Jane Mathis, Don Mathis, Bannockburn Oil Company, Carl Rosen, and Bobby Van Mercer, Appellees.

No. 62951.

Supreme Court of Oklahoma.

May 19, 1987.

As Corrected May 29, 1987.

Gregory L. Mahaffey, J. Jayne Jarnigan, Mahaffey & Gore, P.C., Oklahoma City, for appellants.

J. Michael Medina, Keith F. Sellers, Holliman, Langholz, Runnels & Dorwart, Tulsa, for appellees.

John C. Moricoli, Jr., Gregory S. Sherman, Moricoli, Wilson, Harris & Dubberstein, Oklahoma City, for appellee, Marjorie Thomas.

KAUGER, Justice.

The issues presented concern what expenses may properly be deducted from a lessee's profits to determine if there is production in paying quantities under the habendum clause of an oil and gas lease. The questions posed are: 1) whether overriding royalties paid by the lessee to a third party may be deducted from profits as a cost of production or a lifting expense; 2) whether administrative expenses qualify as lifting or production costs; and 3) whether the existence of a Joint Operating Agreement has any effect on expenses categorized as lifting costs. We find that overriding royalties are not lifting costs for purposes of determining whether a well is producing in paying quantities; that administrative expenses are not properly deductible as costs of production in determining whether a well is producing in paying quantities; and that the existence or nonexistence of a joint operating agreement has no effect on what expenses are deducted as costs of production.

This appeal arises out of a dispute between mineral owners/lessors (appellants) and working interest owners/lessees (appellees) in three oil and gas leases covering various tracts comprising Section 7, Township 21 North, Range 21 W.I.M. in Woodward County, Oklahoma. It is conceded by both the lessors and the lessees that the term "production" in the habendum clause of a lease means production in paying quantities.[1] The dispute here concerns

---

1. *Mason v. Ladd Petroleum Corporation,* 630 P.2d 1283–84 (Okla.1981); *Kerr v. Hillenberg,*

only what items are to be deducted as lifting expenses from profits to determine production in paying quantities. The mineral owners (lessors) originally brought suit in October, 1983, seeking a determination that one lease had expired for lack of production, and subsequently amending their petition in November, 1983, to include the two other leases. All three leases have habendum clause provisions providing for extension of the lease so long as there is production.

The working interest owners (lessees) filed a motion for summary judgment on May 30, 1984, alleging the Hiniger 7A well was producing in paying quantities and that there was, therefore, no basis for cancelling the lease. On the same date, the trial court heard the mineral owners' oral application for summary judgment. Their motion was based on the premise that overriding royalties and administrative expenses constitute a portion of lifting costs and that when these items were deducted, the well was not producing in paying quantities. The trial court granted the working interest owners' motion and denied the mineral owners' motion. In granting summary judgment to the working interest owners, the trial court found that the well was producing, and was capable of continuing to produce, in paying quantities. In reaching this conclusion, the trial court deducted neither the overriding royalties nor the administrative expenses as costs of production; but it indicated that had administrative expenses been deducted, the Hiniger 7A would still be producing in paying quantities.[2]

373 P.2d 66, 68 (Okla.1962); *Henry v. Clay,* 274 P.2d 545–46 (Okla.1954).

**2.** Net return from the well for the relevant period, exclusive of administrative expense and overriding royalty is $2,214.96. Administrative expense is in the amount of $5,081.20 and overriding royalty equals $363.76. Simple mathematics, if administrative expense and overriding royalty are deducted as lifting costs, would necessarily result in a determination that the well has not produced hydro-carbons in paying quantities. In addition, if administrative expenses are deducted as presently constituted, that will result in the same determination.

The Court of Appeals, in an unpublished opinion, reversed the trial court, holding that overriding royalty payments should be deducted as lifting costs. It reversed and remanded the cause for an itemization of the administrative costs to determine whether certain expenses "lumped together" were too remote to be included as lifting expenses, and to determine the effect of the Joint Operating Agreement between the working interest owners. The working interest owners petitioned for certiorari, which has been granted.

I

## OVERRIDING ROYALTIES ARE NOT "LIFTING EXPENSES" FOR PURPOSES OF DETERMINING WHETHER A WELL IS PRODUCING IN PAYING QUANTITIES

■ The principal issue before us is whether the Hiniger No. 7A well has stopped producing in paying quantities subjecting the working interest owners' leases to termination. It is, therefore, necessary to decide whether overriding royalties like "royalties payable to the lessor"[3] are expenses directly related to lifting or production operations requiring offset against production proceeds to determine whether a well is producing in paying quantities. Although we have not previously addressed this precise issue,[4] prior case law dealing with what expenses do constitute lifting costs, and the nature of the interest involved, lead us to the conclusion that overriding royalties are not deductible as lifting or production costs.

**3.** *Mason v. Ladd Petroleum Corp.,* note 1, supra; *Gallaspy v. Warner,* 324 P.2d 848, 852–53 (Okla. 1958); *Henry v. Clay,* note 1, supra at 546–47.

**4.** We have held that lifting expenses may include: costs of operating the pumps, pumper's salaries, costs of supervision, gross production taxes, royalties payable to the lessor, electricity, telephone repairs, depreciation, and other incidental lifting expenses. *See Mason v. Ladd Petroleum Corp.,* note 1, supra; *Gallaspy v. Warner,* note 3, supra; *Gypsy Oil Co. v. Marsh,* 121 Okl. 135, 248 P. 329, 334, 48 A.L.R. 876, 884 (1926).

Perhaps some definitions are in order. The term "lifting costs" relates to a portion of the cost of producing oil and gas[5] exclusive of drilling and equipping costs[6]—the term defies a more precise definition. On the other hand, the meaning of the phrase, "production in paying quantities", is well-settled in Oklahoma law and uncontested here. Such production in the extension provision of an oil and gas lease's habendum clause means production of quantities of oil and gas sufficient to yield a profit to the lessee over operating expenses, even though the drilling costs or equipping costs are never recovered, and even if the undertaking as a whole may result in a loss to the lessee.[7] An "overriding royalty" generally arises through contracts between the lessee and a third person. It is a fractional interest in the gross production of oil and gas under a lease in addition to the royalty reserved to the land owner or lessor.[8] Overriding royalties are not charged with the cost of development or production.[9] Overriding royalties are not royalties payable to the lessor under *Mason v. Ladd Petroleum Corporation*, 630 P.2d 1283–84 (Okla.1981), therefore, they cannot be charged as lifting costs against the working interest owners.

The determination that overriding royalties are not part of lifting or production costs is consistent with extant case law of sister states who have faced this issue.[10] In addition, recognized authorities in the field of oil and gas law are in accord with this characterization.[11] The explanation in 2 E. Kuntz, "Law of Oil & Gas", p. 273, § 26.7(1) (1964)[12] of how overriding royalties are to be considered in determining production in paying quantities is helpful:

*"(I)ncome attributable to the working interest as originally created* is taken into account, and only the lessor's royalty or other share of production is excluded. Thus, *the share of production attributable to any outstanding royalty interest will not be excluded but will be taken into account in determining income."* (Emphasis supplied)

We find this treatment of overriding royalties to be persuasive when the practical ramifications of granting an overriding royalty are considered. If an overriding royalty is carved out of the lessee's estate, it is done in return for a benefit conferred. Overriding royalties, like costs of drilling, are part of the capital investment instead of part of the lifting costs.

**5.** *Laguna Royalty Co. v. C.I.R.*, 406 F.2d 703–04 (5th Cir.1969).

**6.** Because costs of drilling and equipment costs are not items to be included in the cost of producing oil and gas for determining when a well produces in paying quantities and "lifting costs" constitute the expenses to be used for such purposes, drilling and equipping costs must necessarily be excluded. *See Mason v. Ladd Petroleum Corp.*, note 1, supra at 1286; *Stewart v. Amerada Hess Corp.*, 604 P.2d 854, 857 (Okla.1979); *Kerr v. Hillenberg*, note 1, supra at 68; *Henry v. Clay*, note 1, supra at 546; *Walden v. Potts*, 194 Okl. 453, 152 P.2d 923–24 (1944); *Woodruff v. Brady*, 181 Okl. 105, 72 P.2d 709, 711, 113 A.L.R. 391 (1937); *Gypsy Oil v. Marsh*, note 4, supra; *Parks v. Sinai Oil & Gas Co.*, 83 Okl. 295, 201 P. 517–18 (1921); *Ardizonne v. Archer*, 72 Okl. 70, 178 P. 263–65 (1919).

**7.** *Mason v. Ladd Petroleum Corp.*, note 1, supra at 1286; *Stewart v. Amerada Hess Corp.*, note 6, supra; *Kerr v. Hillenberg*, note 1, supra; *Henry v. Clay*, note 1, supra; *Walden v. Potts*, see note 6, supra; *Woodruff v, Brady*, see note 6, supra; *Gypsy Oil Co. v. Marsh*, note 4, supra; *Parks v.*

*Sinai Oil & Gas Co.*, see note 6, supra; *Ardizonne v. Archer*, see note 6, supra.

**8.** *Thornburgh v. Cole*, 201 Okl. 609, 207 P.2d 1096, 1098 (1949).

**9.** *Thornburgh v. Cole, id. See also, O'Neill v. American Quasar Petroleum Co.*, 617 P.2d 181, 184 (Okla.1980); *De Mik v. Cargill*, 485 P.2d 229, 232 (Okla.1971).

**10.** *See Reese Enterprises, Inc. v. Lawson*, 220 Kan. 300, 553 P.2d 885, 898 (1976); *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 692–93, 79 A.L.R.2d 774 (1959); *Transport Oil Co. v. Exeter Oil Co.*, 84 Cal.App.2d 616, 191 P.2d 129, 133 (1948).

**11.** 2 E. Kuntz, "Law of Oil and Gas", p. 273, § 26.7(1) (1964); *See also*, R. Hemingway, "Oil and Gas", p. 282, § 6.4 (2nd ed. 1983); 13 Williams and Meyers, "Oil & Gas Law", p. 88.7, S§ 604.6(f) (1986).

**12.** 2 E. Kuntz, "Law of Oil and Gas", see note 13, supra.

## II

### ADMINISTRATIVE EXPENSES ARE NOT PROPERLY DEDUCTIBLE AS COSTS OF PRODUCTION IN DETERMINING WHETHER THERE IS PRODUCTION IN PAYING QUANTITIES

■ In determining whether a well is being produced in paying quantities, only those expenses which are directly related to lifting or producing operations can be offset against production proceeds to determine whether a well is a producer.[13] The lessors argue that for the 15–month period, July, 1982 through September, 1983, joint interest billings directly attributable to the Hiniger 7A well amounted to $5,081.20, and that this sum represented administrative expenses for supervision and accounting to working interest owners. If the lessors' argument is accepted, and these administrative expenses are deducted as costs of production, simple mathematics demonstrate that there has not been production in paying quantities.[14] However, this Court has previously held such administrative expenses should be excluded in determining whether a well is a producer.[15]

■ The lessors argue that the present case is distinguishable on its facts from *Mason v. Ladd Petroleum Corp.*, 630 P.2d 1283 (Okla.1981), because the charges for administration here are directly attributable to the leases in question. They assert that in *Mason*, it was necessary through accounting procedures, to divide such expenses between a number of leases with each lease supporting a percentage of the administrative expense. At first glance, this argument has merit, but in *Henry v. Clay*, 274 P.2d 545, 548 (Okla. 1954), this Court recognized that actions to terminate a lease for lack of production are equitable in nature. If the mineral owners' argument is accepted, the result would inevitably be that small working interest owners would be faced with having to deduct administrative expenses from production proceeds, while large corporations or operators would evade such deductions based largely on simplicity versus complexity in accounting procedures. A more inequitable result is difficult to perceive.

This holding should not be construed as indicating that administrative expenses are not beyond judicial scrutiny because they may be designated as lifting expenses. It merely means that the heading "administrative expense" should not be used as a tool used by producers to avoid lifting expenses rightly attributable to determining production in paying quantities by merely dumping such expenses in the accounting column. However, the lessors do not allege the lessees have attempted to do so in the present case.

## III

### THE EXISTENCE/NONEXISTENCE OF A JOINT OPERATING AGREEMENT HAS NO EFFECT ON WHAT EXPENSES ARE DEDUCTED AS COSTS OF PRODUCTION

■ The issue of whether a Joint Operating Agreement has any effect on expenses categorized as lifting costs is not a novel question for this Court. In *Mason v. Ladd Petroleum Corp.*, 630 P.2d 1283, 1286 (Okla.1981), we determined that administrative overhead should be excluded in determining whether a well is a producer "both because *no Joint Operating Agreement was here involved,* and because *even if there were, such expenses would still be too indirectly and too remotely related to lifting costs.*" It is, therefore, unnecessary to examine the terms of the Joint Operating Agreement because that agreement will have no effect on what expenses are, or are not to be, deducted as listing costs.

CERTIORARI GRANTED, OPINION OF THE COURT OF APPEALS VACAT-

---

**13.** *Mason v. Ladd Petroleum Corp.*, note 1, supra at 1284; *Stewart v. Amerada Hess Corp.*, note 6, supra.

**14.** See compilation of expenses, note 2, supra.

**15.** *Mason v. Ladd Petroleum Corp.*, note 1, supra at 1286.

ED: JUDGMENT OF THE TRIAL COURT AFFIRMED.

All Justices concur.