1999 OK CIV APP 135

TEXXON RESOURCES, INC.,
Appellant/Counter–
Appellee,

v.

STAR WEST PETROLEUM, INC., Marilyn L. Wheeler, Wheeler Trust 89 and R. Mark McCollough a/k/a Mark McCollough, Defendants,

and

John Bledsoe and Sammie Bledsoe Bost, Appellees/Counter–Appellants,

and

Trimark Resources, Ltd., DWB Management, Ltd., Donald W. Busby and Dean Rogers d/b/a Rockies Oil and Gas, Defendants,

and

Noble Brewer and Bonnie Brewer, Appellees/Counter–Appellants,

v.

Texxon Resources, Inc., Star West Petroleum, Inc., if any such defendants continue to have legal existence; or the names or whereabouts of their respective officers or successors, Defendants.

No. 91,554.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 12, 1999.

Stephen R. McNamara, Brian T. Inbody, Sneed Lang, P.C., Tulsa, Oklahoma, for appellant/counter-appellee.

F. Mack Greever, Claremore, Oklahoma, Jack Y. Goree, Goree, Goree & Goree, P.C.,

Tulsa, Oklahoma, for appellees/counter-appellants.

## OPINION

GOODMAN, P.J.

¶ 1 This is an appeal from a June 8, 1998, order of the trial court canceling oil and gas leases on various properties in Rogers County, pursuant to previously entered default judgments. In its order, the trial court held that the interests of a lien holder, Texxon Resources, Inc., did not survive the cancellation of the leases, but that Texxon's rights to equipment on the leaseholds were superior to those of the mineral interests owners, John Bledsoe, Sammie Bledsoe Post, Noble Brewer, and Bonnie Brewer (collectively owners). Based on the record and applicable law, we reverse and remand for further proceedings.

I

¶ 2 This appeal is based on the parties' agreements with a company called Star West Petroleum. Those agreements were: (1) several oil and gas leases Star West obtained from the owners, and (2) a 1994 contract between Star West and Texxon, in which Star West agreed to pay Texxon for providing labor and materials needed to re-establish production from wells on the leaseholds.

¶ 3 Texxon asserted Star West failed to pay for labor and materials it provided. On May 24, 1995, Texxon perfected an oil and gas mechanics' lien against Star West covering the leasehold estate, including the buildings, equipment, and oil and gas produced from the wells. In May 1996, Texxon filed this action against Star West to foreclose on the lien.

¶ 4 In July 1996, two of the owners, the Bledsoes, filed a motion to intervene, seeking to cancel the leases, asserting Texxon and Star West had failed to produce oil and gas from the leases for more than two years, causing the leases to expire by their own terms. The Bledsoes also claimed a special interest in the equipment on the leases. Texxon answered, denying the Bledsoes' assertions.

¶ 5 In 1997, the other two owners, the Brewers, filed a separate lawsuit making similar assertions, which Texxon once again denied. The trial court consolidated that action with this one.

¶ 6 Between late 1996 and early 1998, the trial court granted a series of default judgments. On December 9, 1996, it granted judgment in favor of the Bledsoes, canceling the leases as to the interests of Star West. On July 28, 1997, it granted judgment in favor of Texxon against Star West, awarding Texxon $78,395 in damages and foreclosing the lien on the property. However, it stayed foreclosure, pending a hearing to resolve the claims between Texxon and the Bledsoes. On January 8, 1998, the court granted judgment in favor of the Brewers, canceling their leases as to Star West. Texxon filed a motion to modify the Brewers' judgment, and the trial court sustained the motion, vacating the stay of foreclosure and allowing Texxon to foreclose on personal property on both the Bledsoes' and the Brewers' leases.

¶ 7 At this stage in the proceedings, the parties sought clarification as to what rights each possessed. On June 8, 1998, the trial court issued the order from which this appeal is taken. That order states:

11. After considering the arguments of counsel and reviewing the briefs of the parties, as well as the stipulated facts as set forth above, the Court finds and determines that the oil and gas leases as above-described have been previously cancelled by the Court consistent with its prior holdings as to Star West Petroleum, Inc. and the ownership of same is hereby vested in [the owners] and the Plaintiff Texxon Resources, Inc., lien does not apply or have application thereto. The . Court further finds that the Oil and Gas Mechanics Lien rights of the Plaintiff Texxon Resources, Inc., is superior to any interests asserted by [the owners] in and to the personal property and oil and/or gas equipment located on such leases owned by Defendant Star West Petroleum, Inc., that Plaintiff is entitled to execute upon said personal property and equipment, and that execution should issue accordingly.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the stay of foreclosure previously entered by the Court on October 28, 1997 be lifted with respect to the oil and gas lien rights of the Plaintiff Texxon Resources Petroleum Inc., as to, and only as to, the personal property and oil and/or gas equipment owned by Star West Petroleum, Inc. and associated with said oil and gas leases located thereon and that execution may hereafter issue as to said personal property and equipment and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the oil and gas leases as above-described are cancelled consistent with the Court's judgment as above set forth as to Star West Petroleum, Inc., and that the interest and lien rights of Texxon Resources, Inc., did not and cannot survive such cancellation.

## II

¶ 8  Texxon has appealed, asserting the trial court erred in limiting Texxon's right to foreclosure to the personal property and equipment on the leases, rather than permitting foreclosure on the wells themselves. Texxon further asserts the trial court erred in concluding the leases had been canceled.

¶ 9  The owners have counter-appealed alleging the trial court erred in failing to hold they were entitled to a common-law possessory lien superior to Texxon's lien concerning the personal property and equipment. The owners argue that the leases had expired by their own terms for failure to produce in paying quantities either before Texxon commenced its operations, or before it filed its lien. In either case, they contend that because the leases had expired when the lien was filed, there was no leasehold estate and no lessee interest to which Texxon could attach a lien.

¶ 10  The rights of the parties flow from their agreements with Star West, and from the statute under which Texxon perfected its oil and gas lien. Title 42 O.S.1991, § 144, states in relevant part:

Any person, corporation, or copartnership who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes ... perform labor or services ... or furnish material, machinery, and oil well supplies used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well, or who shall furnish any oil or gas well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing, or repairing of any gas well ... *shall have a lien upon the whole of such leasehold or oil pipeline, or gas pipeline, or lease for oil and gas purposes, the buildings and appurtenances, the proceeds from the sale of oil or gas produced therefrom inuring to the working interest* ... and upon the material and supplies so furnished, and upon any oil well supplies, tools, and other articles used in digging, drilling, torpedoing, operating, completing, or repairing any oil or gas well, and *upon the oil or gas well for which they were furnished, and upon all the other oil or gas well fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished or labor or services performed. Such lien shall be preferred* to all other liens or encumbrances which may attach to or upon said leasehold for gas and oil purposes and upon any oil or gas pipeline, or such oil and gas wells and the material and machinery so furnished and the leasehold for oil and gas purposes and the fixtures and appliances thereon *subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies; and such lien shall follow said property and each and every part thereof,* and be enforceable against the said property wherever the same may be found; and compliance with the provisions of this article shall constitute constructive notice of the lien claimant's lien to all purchasers and encumbrancers of said property or any part thereof, *subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or services.* (Emphasis added.)

¶ 11  We see nothing in the record to support the owners' assertion that the

leases in question terminated before Texxon perfected its lien May 30, 1995. As Texxon correctly points out, "Oklahoma law is clear that cessation of production in paying quantities does not *ipso facto* deprive the lessee of his lease" and the court "must also look into the circumstances surrounding the cessation, including the duration and the cause of the cessation, as well as the diligence or lack of diligence exercised in the resumption of production," citing *Stewart v. Amerada Hess Corp.*, 1979 OK 145, 604 P.2d 854. In such cases, the grantor must bring an action to cause forfeiture of the leasehold estate, because "[t]he occurrence of the limiting event or condition *does not automatically effect an end to the right.*" *Id.* at ¶ 11, 604 P.2d at 858. The record before us is silent as to whether the owners made a demand on the operator until they intervened in Texxon's action to foreclose, and ultimately secured judicial declarations on December 9, 1996, and January 8, 1998, that the leases were canceled.

¶ 12 In fact, the appellate record belies the owners' contention. In the order on appeal, the trial court specifically found:

> 5. Pursuant to a contract between Texxon Resources, Inc., and Star West Petroleum, Inc., Texxon performed labor and supplied materials on each of the Subject Leases. *Commencing on January 1, 1994, and continuing through March 31, 1995,* Texxon provided services and materials to the Defendant Star West *so as to reestablish production* from certain wells *and production ceased on March 31, 1995.* (Emphasis added.)

No allegation of trial court error with respect to such finding has been preserved for our review.

¶ 13 If the trial court's finding is supported by evidence, the effectiveness and enforceability of Texxon's statutory lien rights would relate back to the date it first rendered labor or services, or furnished material in furtherance of its contract with Star West. The record before us establishes that date as January 1, 1994, *not* May 1995 when the lien was perfected. As a matter of law, Texxon's enforceable lien rights would not be limited to the personal property and equip-

ment at the well sites, but would include "the oil and gas well for which they were furnished," and "the proceeds from the sale of oil or gas produced therefrom inuring to the working interest...." Such lien rights would be superior to the owners' rights regarding the interests enumerated in § 144. *See, e.g., Fourth Nat'l Bank of Tulsa v. Appleby*, 1993 OK 153, 864 P.2d 827.

■ ¶ 14 The owners contend they have a common-law possessory lien which would defeat the specific rights accorded by § 144. They argue such possessory lien "arises out of ... ownership of the leasehold *after the equipment was not removed within a reasonable time.*" (Emphasis added.) We are not persuaded by the owners' argument. The Oklahoma Supreme Court has stated:

> Mechanics' and materialmen's liens give laborers and materialmen a level of protection enjoyed by no other lien holder because such liens have priority *from the date the first labor or materials are furnished,* although the lien may not be perfected by filing until much later.

*Id.* at ¶ 9, 864 P.2d at 831. The owners' reliance on *Williamson v. Winningham*, 199 Okla. 393, 186 P.2d 644, is misplaced. The common-law lien recognized by the Oklahoma Supreme Court in that matter arose in favor of the plaintiff because he had furnished material and performed labor repairing the defendant's automobile pursuant to an *oral agreement* before the defendant had involuntarily deprived the plaintiff of possession of the vehicle, and refused to compensate him for his labor or material. In such a case, the court recognized a common-law lien based on the right of possession, whether or not such lien is actually filed of record. The legal principles pronounced in *Winningham* are inapposite to the facts before us.

### III

■ ¶ 15 The trial court in the matter before us clearly erred as a matter of law. However, most of the judgments which preceded, and culminated in the judgment on appeal were taken by default. Courts are statutorily mandated to avoid the effect of forfeiture by giving due consideration to

compelling equitable circumstances and, before cancellation of an oil and gas lease may be declared, all surrounding circumstances must be taken into consideration. *See, e.g., Stewart v. Amerada Hess Corp., supra; Danne v. Texaco Exploration and Prod., Inc.,* 1994 OK CIV APP 138, 883 P.2d 210.

¶ 16 We are unable to determine with any degree of certainty whether evidentiary material was presented to, or considered by, the trial court in reaching those prior default judgments which form the basis for the judgment before us. As we have discussed, the parties cannot, as a matter of law, share the lien rights as allocated by the trial court. Consequently, we reverse the judgment, and remand the matter with directions to conduct an evidentiary hearing to determine whether the leases in question were producing, or capable of production, between January 1, 1994, and March 31, 1995, and establish the respective rights of the parties in accordance with the law as set out in this opinion.

¶ 17 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

TAYLOR, J., concurs, and RAPP, J., concurs specially.

RAPP, J., specially concurring.

¶ 1 While I concur in the reversal and remand based upon the record presented, I would also note that there is case law consistent with the owners' position that failure to remove oil-field equipment in a timely manner constitutes an abandonment. However, the record must clearly establish lease expiration or termination prior to enabling use of this doctrine. Here, the record is incomplete.