2010 OK 6

**BAYTIDE PETROLEUM, INC.,**
Plaintiff/Appellant,

v.

**CONTINENTAL RESOURCES,**
INC., Defendant/Appellee,

and

**The Aline Oswego Unit,**
Intervenor/Appellee.

No. 106,117.

Supreme Court of Oklahoma.

Feb. 9, 2010.

Rehearing Denied May 3, 2010.

Richard D. Gibbon, Gibbon, Barron & Barron, PLLC, P. Craig Bailey, Young Bowden Baily, P.C., Tulsa, OK, for plaintiff/appellant.

Glenn Allen Devoll, Julia Christina Rieman, Enid, OK, for defendant/appellee and intervenor/appellee.

WATT, J.:

¶ 1 We granted certiorari to consider an issue of first impression: whether an oil and gas lease sought to be terminated for failure to produce in paying quantities during the secondary term remains effective until the lease has been judicially cancelled? We hold that it is not the court order which terminates the lease. Rather, it is the failure to produce in paying quantities under the habendum clause during the lease's secondary term. In the instant cause, the lease terminated by its own terms before the Alfalfa County court issued its order.[1]

¶ 2 Our determination that the date of termination may precede the date of adjudication and did so here, necessitates that we also address Baytide's assertion that it should not be held to the legal obligations arising based on its status as a lessee in the Unit. Specifically, Baytide insists that it should not be bound by its agreement to accept $13,200.00 for its equipment located on the lease.

¶ 3 Baytide voted to approve the method of valuation of the equipment and the values assigned thereto, totaling $13,200.00 for the two Ford wells.[2] Under these facts,[3] Baytide

---

1. The Alfalfa County court issued its order in favor of Continental on November 19, 2002 determining that Baytide's lease had terminated under the habendum clause for failure to produce in paying during a twenty-eight (28) month period where no efforts were made to restore production. The order of the Garfield County Court filed on February 1, 2007, attachment A–1 of the petition in error, provides in pertinent part:

"... On November 19, 2002, the District Court of Alfalfa County cancelled the leases held by Baytide. As a result of its leases obtained on April 21–23, 2001, CRI became both the work-

ing interest owner and unit operator of the Ford wells...."

2. Record on accelerated appeal, filed on July 18, 2008, Volume I, Exhibit D to Item 4, minutes from the meeting of the working interest owners held on June 5, 2002 providing in pertinent part:

"... Tom asked for a vote to approve the method of valuation of the equipment and the subsequent values assigned to the equipment from each well. CRI–Yes, Scoggins–Yes, Baytide—Yes ..."

Record on accelerated appeal, filed on July 18, 2008, Volume I, Exhibit D to Item 4, Aline Oswe-

is bound by its agreement to accept $13,200.00 for the lease equipment.[4]

## FACTUAL AND PROCEDURAL HISTORY

¶4 The cause arises from a tortured procedural and factual background involving litigation in two counties and before the Corporation Commission giving rise to three appeals. Two of the matters were decided by unpublished Court of Civil Appeals opinions and the third was dismissed.[5]

■ ¶5 In 2000, Baytide acquired the equipment and working interests in two wells operated in Alfalfa County and known as the Ford B # 1 and the Ford B # 2. The following year, Continental obtained top leases[6] covering the two oil and gas wells. In July of 2001, Continental filed an action in Alfalfa County seeking to have Baytide's base lease terminated for failure to produce in paying

quantities. In September of the same year, while the termination cause remained pending, the Commission established a Plan of Unitization creating the Aline Oswego Unit and designating Continental as the unit operator. The Unit includes the Ford wells. Under the plan, each lessee had the option to participate. The existing oil and gas equipment on the leases was to be evaluated, and its owner given credit for the appraised value of the same.

¶6 In November of 2001, the Alfalfa County court granted Continental's request for a temporary injunction. Baytide was ordered to comply with the plan and to deliver the two wells and all operating equipment to Continental along with production and well records. **The order did not require that Baytide participate in the unit's operation or set a price for the sale of the operating equipment.[7]**

go Unit Equipment Valuation for the Luther Ford B 1–36, $6,600 and for the Luther Ford B 2–36, $6,600.

3. Baytide's other actions are also of interest. It opposed the unitization order issued by the Corporation Commission [The unitization order was affirmed in *Continental Resources, Inc. v. Baytide Petroleum, Inc.*, No. 96,932 (Okla.Civ.App.2003) (unpublished).]; it appealed the temporary injunction ordering it to comply with the unitization plan [The injunction was affirmed in *Continental Resources, Inc. v. Baytide Petroleum, Inc.*, No. 97,104 (Okla.Civ.App.2003) (unpublished).]; it asserted its lessee status vigorously defending the action to quiet title to its interests in the two wells located in the Unit [On December 6, 2005, Baytide appealed the decision terminating the lease for failure to produce in paying quantities. Appeal No. 102,846 was dismissed on Baytide's motion on May 1, 2006.]; and it elected to participate in the cost of forming the Unit, its installation and operation [Record on accelerated appeal, filed on July 18, 2008, Volume I, Exhibit C to Item 4, a letter dated November 21, 2001, signed by Michael J. Murphy, President, Baytide Petroleum, Inc., providing in pertinent part:
"... Baytide does hereby elect to participate in the cost of forming the Unit and installation and operation of the Unit, even though it is our position that this requirement is in violation of Oklahoma law...."].

4. Likewise, we are unconvinced that the $13,200.00 figure did not include Baytide's heater-treater. The affidavit of Jeff B. Hume, found as an attachment to Item 8 of the record on accelerated appeal, filed on July 18, 2008, Volume III, providing in pertinent part:

"... At the time the Aline–Owesgo Unit held its meeting in 2001 to approve the valuation of equipment to be acquired by the Unit, the associated equipment located at the LACT Unit serving the Ford B–1 and B–2 wells (hereinafter the 'Wells') was comprised of one 300 barrel tank, a 4' × 12.5' heater treater and was included in the equipment valuation for these two Wells, such valuation totaling $13,200.00...."
Exhibit A to the affidavit is the well equipment inventory for the Luther Ford B–2 well. It includes a vertical heater-treater manufactured by Sivalls in 1965 with dimensions of 4' × 12.5' and a serial number of 15669.

5. The unitization order was affirmed in *Continental Resources, Inc. v. Baytide Petroleum, Inc.*, No. 96,932, see note 3, supra; the injunction was affirmed in *Continental Resources, Inc. v. Baytide Petroleum, Inc.*, No. 97,104, see note 3, supra; and Appeal No. 102,846 was dismissed on Baytide's motion on May 1, 2006.

6. Top leases take effect only if the pre-existing lease expires or is terminated. The earlier leases are commonly referred to as base leases. *Smith v. Marshall Oil Corp.*, 2004 OK 10, fn. 4, 85 P.3d 830; *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶11, 911 P.2d 1205.

7. Record on accelerated appeal, Volume II, Document 8, Exhibit 4, filed July 18, 2008 providing in pertinent part:

"... CRI's Second Motion for Temporary Injunction is granted and Baytide is ordered to comply with the Plan of Unitization and imme-

¶ 7 The Alfalfa County court issued it's order in favor of Continental on November 19, 2002 finding that Baytide's lease had terminated under the habendum clause for failure to produce in paying quantities. Until that date and thereafter in a subsequently dismissed appeal, Baytide contended that its leases were valid.[8] Nevertheless, the trial court found that: Continental was not claiming that Baytide's leases automatically terminated; there was a twenty-eight (28) month cessation of production during which time Baytide made no effort to restore production; Baytide presented no reasonable basis for the cessation of production; **the leases expired by their own terms by reason of cessation of production for an unreasonable period of time (28 months);** and the underlying lease should be canceled for failure to produce in paying quantities.[9] Baytide appealed, but dismissed the cause on May 2, 2006.

¶ 8 Baytide filed the present action in Garfield County in April of 2006 asserting that it was not a lessee when the Unit was formed and that its oil and gas equipment located on the Ford wells had been wrongfully converted and Continental had been unjustly enriched. The petition was amended on May 12th to add a misuse of process allegation. Through a series of orders, the Garfield County district court: quieted title in the equipment in the Unit; awarded Baytide $13,200 for the equipment, including the heater treater; and determined there was no evidence of misuse of process.

¶ 9 Baytide filed its appeal on July 18, 2008. In May of 2009, the Court of Civil Appeals affirmed finding that Baytide remained a lessee when the Unit was formed because, prior thereto, no court order had been entered terminating the lease for failure to produce in paying quantities. We granted certiorari on October 5, 2009.

## DISCUSSION

**¶ 10 a. A court order may be necessary to adjudicate the rights of the parties when allegations are that a lease has terminated for failure to produce in paying quantities. Nevertheless, the lease is not cancelled because of the entrance of the court order. The lease terminates for the failure to produce in paying quantities under its own terms pursuant to the habendum clause.**

¶ 11 Baytide asserts that cessation of production in paying quantities in the secondary term of a lease for an unexplained or unreasonable period of time results in the lease's expiration. Under such circumstances, Baytide contends that it is the period of time found to have exceeded the bounds of reasonableness which fixes the date of lease cancellation rather than the date a court decree enters cancelling the lease contract. Continental argues that a lease expires for lack of production in paying quantities only upon the date a court order enters cancelling the same. We disagree with Continental's argument.

¶ 12 Both parties find support in our pronouncement in *Stewart v. Amerada Hess Corp.*, 1979 OK 145, 604 P.2d 854. *Stewart*

diately deliver to CRI the Luther Ford B No. 1 and the Luther Ford B No. 2 Wells; the casing of the Wells; the tubing in the Wells; the wellhead connections for the Wells; and all other lease and operating equipment that is used in the operation; and a copy of all production and well records that pertain to the Wells...."

8. Transcript of proceedings, June 6, 2007, providing in pertinent part at p. 23:
   "... THE COURT: The plaintiffs were contesting. You didn't admit at that time, never did admit until the Court's order that the lease ceased.

MR. GIBBON: Well, I that [sic] it that my answer to that would have to be in the affirmative. We had an answer filed saying that we thought our lease was good and the Court determined though on November the 2nd that in all probability it wasn't and ordered us to get out of the picture and we complied with that and we did all the other things that the Court ordered us to do...."

9. Record on accelerated appeal, Volume III, Document 15, Exhibit A, filed July 18, 2008.

made it clear that, in Oklahoma, the cessation of production during the secondary term of a lease is not in and of itself sufficient to automatically terminate a lease. Rather, a lease remains viable so long as the interruption of production in paying quantities does not extend for an unreasonable period which is not justifiable in light of all the circumstances. Under *Stewart*, a decree of cancellation may issue where the record supports a determination that a lease is not held by production in paying quantities and no compelling circumstances justify continued production from the unprofitable well operations. Nevertheless, *Stewart* does not hold, as Continental argues, that a lease will expire for lack of production in paying quantities only upon the issuance of a judicial decree.

¶ 13 *Smith v. Marshall Oil Corp.*, 2004 OK 10, 85 P.3d 830 is instructive. In *Smith*, two issues were presented. The first was whether the evidence was sufficient to support the determination that the subject leases expired due to lack of production in paying quantities. The second, involved the issue of whether the equipment left on the premises had been in place for a sufficient period of time to vest ownership in the surface owner. We answered both issues in the affirmative.[10]

¶ 14 The trial court in *Smith* directed verdict in favor of Marshall Oil on August 2, 2001 finding that the oil and gas leases expired by their own terms. On certiorari, we acknowledged that in the absence of compelling equitable considerations to justify a cessation in paying quantities over a period spanning three years, the **leases would terminate under the terms of the habendum clauses.** Determining that no extenuating circumstances occurred justifying the failure to produce in paying quantities, **we held that the leases expired by the terms of their own habendum clauses.**[11]

¶ 15 The leases at issue in *Smith* contained a provision allowing the lessor six months to recover equipment from the lease premises following a cessation of production. Nevertheless, **the *Smith* Court held that the period in which the well ceased to produce in paying quantities indisputably triggered the six-month period for Smith to remove his equipment.** The opinion goes on to provide in pertinent part at ¶ 22:

"... Both Smith's actions and inaction with regard to the equipment he left on the subject leases supports a determination that ownership vested in the surface owner, under the specific lease provision ..."

The trial court decided the quiet title issue on August 2, 2001. The period of cessation of production occurred between 1996 and 1998. If, as Continental contends, a lease expires only upon the issuance of a court order or judgment, Smith should have had six months from the date of the decree to remove his equipment from the well site. Instead, the *Smith* opinion makes it clear that the failure to present evidence regarding inclement weather to preclude removal,

10. On first blush the Court of Civil Appeals opinion in *Danne v. Texaco Exploration & Prod. Inc.*, 1994 OK CIV APP 138, ¶ 9, 883 P.2d 210, holding that an oil and gas lease did not automatically terminate, after more than four years of no production from a gas well for failure to produce gas in paying quantities after the lessee had produced gas from the well so as to move the lease from its primary term into its secondary term might appear to be contrary to both *Smith v. Marshall*, see note 6, supra and to our determination here. However, *Smith* distinguished *Danne*, this note, supra, on the same grounds that it differs from the facts and the law in this cause. The *Smith* opinion providing in pertinent part:

"*Danne* is distinguishable on its facts as well as one of its legal theories—a claim that the lessee breached the implied covenant to market the product with due diligence. The instant matter is not a claim for breach of the implied covenant to market the product. It is a claim to quiet title under the theory that Smith's leases expired under their own terms, contained in the habendum clause...."

11. Similar determinations have been made in: *Hunter v. Clarkson*, 1967 OK 114, ¶¶ 6 and 9, 428 P.2d 210 [Lease terminated by its own terms by virtue of voluntary cessation of production.]; *Townsend v. Creekmore–Rooney Co.*, 1958 OK 265, ¶ 6, 332 P.2d 35; *Anthis v. Sullivan Oil & Gas Co.*, 1921 OK 321, ¶ 0, 83 Okla. 86, 203 P. 187 [Lease sought to be cancelled for failure to produce terminated by its own terms.].

or any other variable for equitable consideration, Smith's failure to remove the equipment during the six-month period immediately following cessation of production, occurring some two-and-one-half years prior to the entrance of the court order, resulted in ownership of the equipment vesting in the surface owner.[12]

¶ 16 *Stewart* provides that a lease will not expire for lack of production in and of itself. However, it does not hold that only a judicial determination may end a lease for lack of production in paying quantities. *Smith*'s pronouncement makes it clear that it is the unreasonable cessation of production that causes the lease to terminate. Therefore, in conformance with *Smith* and *Stewart*, we determine that it is the failure to produce in paying quantities during the lease's secondary term rather than the entrance of a court order which terminates a lease. In the instant cause, the lease terminated by its own terms before the Alfalfa County court issued its order.[13]

¶ 17 A federal court reached the same result we do today upon parallel reasoning. The Western District Court of Oklahoma determined in *Enfield v. Atlantic Richfield*, 778 F.Supp. 33 (W.D.Okla.1989) that a decree of court is not required to terminate an oil and gas lease containing a habendum clause. The *Enfield* court looked at our opinion in *Stewart* and concluded that, under Oklahoma law, such leases may expire under their own terms under the habendum clause for failure to produce in paying quantities. **The federal court acknowledged that once the leases terminated pursuant to the habendum clauses, the entrance of a judicial decree becomes necessary, not for the purpose of cancelling the lease, but to adjudicate the appropriate remedy.** Here, the remedy afforded Baytide was payment for its equipment totaling $13,200.00, an amount it previously agreed to accept.[14] Continental was granted the acknowledgment of the viability of its lease.

¶ 18 Two non-precedential [15] Court of Civil Appeals' opinions have visited the issue of whether a judicial determination is required to terminate a lease under a habendum clause for failure to produce in paying quantities. *Texxon Resources, Inc. v. Star West Petroleum, Inc.*, 1999 OK CIV APP 135, 994 P.2d 1192, promulgated by Division IV, provides that an action must be brought to cause forfeiture of the leasehold estate. The second opinion, *Duerson v. Mills*, 1982 OK CIV APP 14, 648 P.2d 1276, indicates that this Court "has held it requires a court order to cancel a lease." To the extent *Texxon* and *Duerson* fail to conform with the principles announced today, they are hereby expressly overruled.

¶ 19 **b. Baytide agreed to the valuation method and the value assigned to its property. It is bound by its agreement to accept $13,200.00 for the lease equipment.**

■ ¶ 20 Baytide alleges that it was constrained to participate by court order in the Unit and to accept the value assigned to its equipment by the operator. Continental argues that the temporary injunction that ordered Baytide to turn over the wells and comply with the Unit did not require it to elect to participate in the cost of forming, installing and operating the Unit, nor did it require Baytide to approve the values assigned by the working interest owners' com-

---

**12.** See also, *Fisher v. Dixon*, 1940 OK 378, ¶ 14, 188 Okla. 7, 105 P.2d 776. In *Fisher*, suit was filed on September 6, 1938 alleging that the lease had expired for failure to produce in paying quantities. This Court concluded that the trial court was justified in deciding that the least terminated on June 28, 1938, some three months before judgment was entered. It is clear under Fisher as it is under *Smith v. Marshall Oil Corp.*, see note 6, supra, that the event terminating the lease preceded the entrance of judgment.

**13.** See note 10, supra.

**14.** See note 2, supra.

**15.** Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 30.5 and 30.14.

mittee to the equipment on the wells. The operator insists that Baytide is bound by its agreement to accept $13,200.00 as the value assigned to equipment located on the lease. We agree with Continental's contention.

¶21 The order granting the temporary injunction was filed in the district court of Alfalfa County on November 2, 2001. It provides in pertinent part:

"... CRI's [Continental's] Second Motion for Temporary Injunction is granted and Baytide is ordered to comply with the Plan of Unitization and immediately deliver to CRI [Continental] the Luther Ford B No. 1 and the Luther Ford B No. 2 Wells; the casing of the Wells; the tubing in the Wells; the wellhead connections for the Wells; all other lease and operating equipment that is used in the operation; and a copy of all production and well records pertaining to the Wells...."

There is no provision in the order requiring Baytide to agree to a method of valuation or to accept the value assigned to its equipment by Continental. Nevertheless, in a meeting of working interest owners held on June 5, 2002, **Baytide voted to approve the valuation method and the value assigned to its equipment.** Under these facts, Baytide is bound by the agreement to accept $13,200.00 for the lease equipment.[16]

## CONCLUSION

¶22 The gravamen of Baytide's arguments all center around its contentions that it was somehow coerced by the play of events and the dates upon which determinations were made in the various proceedings both to become involved in the Unit and to release its equipment to Continental. Undoubtedly, Baytide was aware of the factors which would be considered by the Alfalfa County Court in the lease termination cause. It could have avoided extended litigation and associated expenses by filing a release of lien. Furthermore, it was neither required to agree to the valuation methods nor to

16. See notes 2 and 4, supra.

accept the $13,200.00 for the lease equipment. Nevertheless, it did so.

¶23 Our prior decisions make it clear that although a court order may be necessary to adjudicate the rights of the parties when allegations are that a lease has terminated for failure to produce in paying quantities, a lease terminates not because of the entrance of a court order but for failure to produce in paying quantities under the lease's habendum clause. Furthermore, under the facts presented, where Baytide agreed to the valuation method and the value assigned to its property, it is bound by the agreement to accept $13,200.00 for the lease equipment.

**COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT AFFIRMED.**

ALL JUSTICES CONCUR.