2016 OK CIV APP 80

**STEPHENS PRODUCTION COMPANY, Continental Properties, LLC, and Eagle Oil and Gas Co., Plaintiffs/Appellants,**

v.

**TRIPCO, INC., Defendant/Appellee.**

**Case Number: 113,896**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided: 10/20/2016

Mandate Issued: 12/30/2016

Gregory L. Mahaffey, Cody J. McPherson, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Robert G. Gum, Charles L. Puckett, Jr., Gum, Puckett & Mackechnie, L.L.P., Oklahoma City, Oklahoma, for Defendant/Appellee.

Opinion by Brian Jack Goree, Judge:

¶1 The sole issue presented is one of statutory construction, that is, whether the statutory Pugh Clause[1] found at 52 O.S.2011 87.1(b) applies to a secondary recovery unit formed pursuant to 52 O.S.2011 287.1, *et seq.* (the Unitization Act). Whether it applies will affect which oil and gas leases are in effect. Based upon statutory analysis and after considering the differing legislative purposes of the two statutes, we conclude the Pugh Clause in § 87.1(b) does not apply to secondary recovery units created under the Unitization Act, and, as a consequence, Appellee's lease was held by production and remained valid. The trial court order so finding is AFFIRMED.

## FACTS

¶2 Defendant/Appellee, Tripco, Inc. (Tripco) recorded an oil and gas lease (the Tripco Lease), executed by Joe Nekvaphi, Jr. in 1996, for the 160 acres comprising the SE/4 of Section 31–18N–2W, Logan County, Oklahoma. Plaintiffs/Appellants, Stephens Production Company and Eagle Oil & Gas Co. claimed ownership interests based on three oil and gas leases executed in 2013. Stephens held two leases to the E/2 SE/4 and SW/4 SE/4 in Section 31. Eagle held a lease to the NW/4 SE/4 (less and except the Oswego formation) in Section 31 and the NE/4 SE/4 and S/2 SE/4 in Section 31. In November of 2013, Tripco requested that Stephens and Eagle release their rights under the three leases but they declined.

¶3 Stephens and Eagle (Plaintiffs) filed a Petition on January 31, 2014, seeking cancellation in part of the Tripco Lease and quieting title in themselves. According to their Petition, there has been no production from the S/2 or NE/4 of the SE/4 of Section 31 and production in the NW/4 of SE/4 of Section 31 is limited to the Northwest Lawrie Oswego Unit (NLOU), a field-wide unit established pursuant to the Unitization Act by a July 19, 1996 order of the Oklahoma Corporation Commission.[2] Plaintiffs claimed that any in-

---

1. The statutory Pugh Clause (named for Louisiana attorney Lawrence Pugh, who reportedly developed the first version in 1947) found at § 87.1(b), provides: "In case of a spacing unit of one hundred sixty (160) acres or more, no oil and/or gas leasehold interest outside the spacing unit involved may be held by production from the spacing unit more than ninety (90) days be-

yond expiration of the primary term of the lease."

2. The 1996 order established the NLOU for enhanced recovery from the Oswego Limestone Zone and described the area unitized as:

E/2 SE/4 Section 23; SW/4 Section 24; NW/4 AND S/2 Section 25; E/2 E/2 Section 26; E/2

terest of Tripco in the Tripco Lease outside of the NW/4 SE/4 had expired, the Tripco Lease is "well beyond" 90 days past its primary term, *i.e.*, the time period in the Pugh Clause, and the Tripco Lease constitutes a cloud on their titles. They asked for cancellation in part of the Tripco Lease as to the S/2 SE/4 and NE/4 SE/4 of Section 31, that Tripco be restrained and enjoined from exercising any rights by reason of the Tripco Lease, and for an award of attorney fees and costs "pursuant to the NonJudicial Marketable Title Procedures Act (12 O.S. §§ 1141–1141.5)."

¶ 4 According to the order creating the NLOU:

Unit operations are necessary because enhanced recovery operations will prevent waste, increase ultimate recovery, and protect correlative rights. The Oswego Limestone Zone common source of supply primary production is at its economic limit with only a limited number of barrels of primary oil estimated to be recoverable.

\* \* \*

The result of the enhanced recovery operations will be for the common good and the general advantages of the owners because primary production is at the economic limit and, if enhanced recovery operations are successful, all those sharing or participating in production from the Unit Area will benefit therefrom. None of the common source of supply to be unitized is an allocated pool.

\* \* \*

For so long as the Unit is in effect, the terms and provisions of the Plan and this Order shall supersede, for all purposes of the Plan and this Order, the operative effect of each drilling and spacing unit order heretofore entered by the Commission particularly with respect to the prescribed well locations for the Oswego Limestone Zone common source of supply within the Unit area or any portion thereof.

NE/4, SE/4, and E/2 SW/4 Section 35; Section 36, T18N, R3W, and N/2, SW/4 and NW4 SE/4 Section 31, T18N, R2W, all in Logan County, Oklahoma.

(July 18, 1996 Report of the Commission, Cause CD No. 960002048, Order No. 403591).

¶ 5 Tripco filed an answer and a counterclaim seeking to quiet its own title. Tripco claimed its lease remained valid due to production from the NLOU, the Pugh Clause was inapplicable because the NLOU is not a spacing unit, and the oil and gas leases of Stephens and Eagle were inferior and without effect. Tripco claimed the Tripco Lease contains no depth or Pugh Clauses which could limit its effectiveness based upon the source of production. Tripco asserts Plaintiffs knew of the Tripco Lease when they acquired their three 2013 leases, which was just after Tripco elected to participate in the recently drilled and completed Dale No.1–30–31H Well (the Section 31 Horizontal Well) with all of its Tripco Lease acreage by way of a forced pooling order obtained by Stephens. Tripco contends Stephens, the designated operator of the Section 31 Horizontal Well, used the three 2013 leases to unilaterally reduce Tripco's working interest in that well and increase Plaintiffs' working interests. Tripco asked for an order quieting title, a declaration that the Tripco Lease was valid, a finding Plaintiffs' 2013 leases were inferior to and without effect during the effectiveness of the Tripco Lease, that Plaintiffs be enjoined from asserting any rights based on their three leases (including participation in Section 31 wells or production), and an award for special damages, attorney fees, and costs.

¶ 6 In their answer, Plaintiffs denied the Tripco Lease was prior in right to their own leases and denied that their own leases covered any interest in the NW/4 SE/4 of Section 31. Plaintiffs claimed Tripco held no interest outside of the NW/4 SE/4 of Section 31 and it could not participate in the Section 31 Horizontal Well located outside of the NW/4 SE/4 of Section 31. In response to Tripco's counterclaim, Plaintiffs denied their leases were acquired while the Dale No. 1–30–31H Well was drilling.

The Plan of Unitization for the NLOU encompassed 30 tracts located in Sections 23, 24, 25, 31, 35, and 36 (all at 18N–3W, in Logan County). Seven of the tracts are within Section 31, among which was NW/4 SE/4.

¶ 7 Plaintiffs moved for summary judgment and Tripco moved for partial summary judgment. Plaintiffs argued "Oklahoma authorities make no distinction between the rights, remedies and obligations of leasehold owners within a secondary recovery unit *vis a vis* a traditional drilling and spacing unit," and the Pugh Clause had operated to extinguish the Tripco Lease outside of the NW/4 SE/4 of section 31. Plaintiffs pointed out that the order approving the NLOU supplanted and superceded existing drilling and spacing units and argued therefore it does, in fact, constitute a spacing unit. Citing their exhibits regarding the legislative history for the 1977 enactment of the Pugh Clause and noting the 1,940 acre size of the NLOU, Plaintiffs contended the Legislature "ultimately resolved to limit the statute to units greater than 160 acres, *i.e.* **large units**," (emphasis in original), and made application of the Pugh Clause consistent with legislative intent.

¶ 8 Tripco's response and motion for partial summary judgment noted the phrase "spacing unit" appeared three times in the Pugh Clause inserted in § 87.1(b) in 1978, and the phrase was used an additional 20 times in the remaining subsections of § 87.1 but was found nowhere in the Unitization Act. Neither does the word "spacing" appear in the Unitization Act, though it "is used many additional times" in § 87.1. Tripco noted the Pugh Clause begins with the words "[i]n the case of a spacing unit" and contended spacing rules do not apply to field-wide enhanced recovery units such as the NLOU. Tripco disagreed that § 87.1 and the Unitization Act address the same rights and asserted hat field-wide units pooled both leasehold and royalty owners while spacing units pooled only royalty owners. In addition, Trip-

co observed that a unit created under the Unitization Act is a legal entity, "a body politic and corporate," owing fiduciary duties[3] not applicable to spacing units. According to Tripco, although an "introductory paragraph," *i.e.* ¶ 0, cited by Plaintiffs from *Baytide Petroleum, Inc. v. Continental Resources*, 2010 OK 6, 231 P.3d 1144,[4] referred to a "drilling and spacing unit," the text of Justice Watt's opinion did not contain this phrase or the word "spacing." Tripco argued that use of the phrase "spacing unit" and "spacing" in § 87.1 are explicit and plain so there is no need to employ interpretive devices to ascertain a legislative intent to limit application of the Pugh Clause to well spacing units. It also pointed out that Plaintiffs' own exhibits show the Legislature ultimately rejected the broader term "producing units" for the more specific term "spacing units."[5] Tripco argued the Pugh Clause must be narrowly construed because the adoption of Plaintiffs' analysis would effect a forfeiture, and forfeitures are disfavored. The parties filed further responses and a surreply in which each disagreed with the other's statutory analysis.

¶ 9 In a judgment filed on January 9, 2015, the trial court found Tripco's lease was valid and the production from the unit operations in the NW/4 of the SE/4 of Section 31 held and maintained Tripco's lease. Plaintiffs' motion for summary judgment was denied and Tripco's motion for partial summary judgment was sustained. In an agreed order filed on April 20, 2015, the trial court entered findings and conclusions pursuant to 12 O.S. 2011 § 994 to protect the parties' interests and allow appellate review. The agreed order also granted leave for the parties to file further pleadings to address issues not re-

3. Plaintiffs also argued the Court, in *Hebble v. Shell Western E&P*, 2010 OK CIV APP 61, 238 P.3d 939, had recognized fiduciary duties based upon a spacing order but that result was changed by the Legislature's subsequent enactment of 52 O.S.Supp.2012 § 902. This explanation mischaracterizes *Hebble*, which addressed the statute of limitations applicable to claims regarding a unitized area, not a spacing order.

4. We note the descriptive paragraph enumerated as "zero" which precedes Justice Watt's opinion is not a "Syllabus by the Court."

5. Tripco also contended the Tripco Lease was held not only by production from the NLOU but also by production from a horizontal well in a spacing unit in the Mississippi formation covering all of Section 31, thereby leaving no part of its leasehold outside of a spacing unit to which the Pugh Clause could apply. This raises a fact-based issue not within the scope of the current appeal, which concerns the legal question whether the Pugh Clause applies at all to a field-wide enhanced recovery unit created under the Unitization Act.

solved by the entry of the partial summary judgment in Tripco's favor.[6] This appeal followed.

### STANDARD OF REVIEW

¶ 10 Statutory construction presents a question of law. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission*, 1995 OK CIV APP 76, 900 P.2d 470. An order granting summary relief disposes of legal issues, and therefore the review we conduct on appeal is *de novo*. *Brown v. Nicholson*, 1997 OK 32, 935 P.2d 319; *Manley v. Brown*, 1999 OK 79, 989 P.2d 448.

¶ 11 The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and intent "is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." *World Publishing Co. v. Miller*, 2001 OK 49, 32 P.3d 829, 832 (footnotes omitted).

### ANALYSIS

¶ 12 Plaintiffs contend the Pugh Clause applies, Tripco's lease rights were not held by production, and the Tripco Lease became invalid 90 days after the lease's primary term. Tripco contends the Pugh Clause does not apply to the plan of unitization for the Northwest Lawrie Oswego Unit (NLOU), a secondary recovery unit formed pursuant to § 287.1, *et. seq.* We agree. The statutes address separate issues regarding oil and gas development.

¶ 13 The Pugh Clause, added to § 87.1 by the Legislature in 1977, appears in a statutory scheme addressing the well spacing and drilling unit locations for common sources of supply of oil or natural gas. The Pugh Clause begins by addressing the effect of production in "a *spacing unit*," of 160 acres or more upon leasehold interests outside "the *spacing unit*," and specifies that such production

"from the *spacing unit*" may not be used to hold such leasehold interests more than 90 days beyond expiration of a lease's primary term. (Emphasis added). 52 O.S.2011 § 87.1(b).

¶ 14 Section 87.1 establishes a method "[w]henever the production from any common source of supply of oil or natural gas in this state can be obtained only under conditions constituting waste or drainage not compensated by counterdrainage." Since before the earliest events in this controversy, the Oklahoma Corporation Commission has been empowered to establish well spacing and drilling units "[t]o prevent or assist in preventing the various types of waste of oil or gas prohibited by statute, or any wastes, or to protect or assist in protecting correlative rights." 52 O.S.Supp.1947 § 87.1(a).

¶ 15 Section 287.1, *et seq.* establishes a statutory scheme for secondary recovery, and the order for a plan of unitization must be based upon evidence that the area included is of such a size as is reasonably required for the successful and efficient operation and management of all or part of a common source of supply without adverse consequences to the remainder of a common source of supply, and the plan must be suited to the individual needs and requirements of the particular unit, dependent upon facts and conditions found to exist as to the unit and unit area. 52 O.S.Supp.1995 § 287.4. Creation of a unit under the Unitization Act creates "a body politic and corporate." 52 O.S.1951 § 287.8

¶ 16 With the enactment of 52 O.S.1951 § 287.1, *et seq.*, the Legislature found and determined that it is desirable and necessary, under the circumstances and for the purposes hereinafter set out, to authorize and provide for unitized management, operation and further development of the oil and gas properties to which this act is applicable, to the end that a greater ultimate recovery of oil and gas may be had therefrom, waste prevented, and the correlative rights of the

---

6. The appellate record does not reflect that any interest or rights held by Continental Properties, LLC, were at issue in the summary proceedings.

owners in a fuller and more beneficial enjoyment of the oil and gas rights, protected.

¶ 17 Since first enacted in 1951, the Unitization Act has allowed the Oklahoma Corporation Commission to enter findings that unitization is feasible, is reasonably necessary for pressure maintenance or repressuring operations, will prevent waste, will increase recovery of substantially more oil and gas from a common source of supply with reasonable probability, may be done such that the cost will not exceed the value of additional oil and gas recovered, and is for the common good upon terms which are fair, reasonable and equitable. 52 O.S.1951 § 287.3. Further, application of a statutory Pugh Clause to acreage within a unitized area appears to conflict with and contravene provisions in 52 O.S. 1951 § 287.9, which provide that operations carried on "under and in accordance with the plan of unitization" shall be "regarded and considered as a fulfillment of and compliance with all of the provisions, covenants, and conditions, express or implied, of the several oil and gas mining leases" for land in the unit area and of "other contracts pertaining to the development thereof, insofar as said leases or other contracts may relate to the common source of supply or portion thereof included in the unit area," and that "[w]ells drilled or operated on any part of the unit area no matter where located shall for all purposes be regarded as wells drilled on each separately-owned tract within such unit area."

## CONCLUSION

¶ 18 Although both § 87.1 and § 287.1, *et seq.* address production of oil and gas from common sources of supply, the Legislature has provided two distinct statutory schemes which address different situations. The trial court concluded § 87.1 "deals with pre production of oil and gas wells during the primary term of a lease," § 287.1, *et seq.* "deals with enhanced recovery operations after wells in a field have produced under primary operations for a length of time," and that the Pugh Clause in § 87.1 "does not apply to the field-wide enhanced recovery united created by the Unitization Act of 52 O.S. § 287.1, *et seq.*" When determining whether a statute applies to a given set of facts, the courts focus on legislative intent, which is ascertained from the whole act, in light of its general purpose and objective and after considering relevant portions together to give full force and effect to each provision. *Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882, 886. Following such an analysis, we come to the same result as that of the trial court. The Pugh Clause does not apply, and the Tripco Lease was valid because it was held by production in the unit formed under the Unitization Act. The judgment on appeal so finding is AFFIRMED.

BUETTNER, V.C.J., P.J., and MITCHELL, J., concur.